MADDOX, Justice.
This is an appeal from the trial court’s order dismissing the defendant foreign corporation for lack of in personam jurisdiction.
In late 1974, James Cofer and Bill Sanford were in the process of negotiating with John Donaldson concerning the development of the River North Mobile Home Park. The parties entered into what amounted to a joint venture. For the purpose of providing more capital, one John *845 Newcomer was brought into the project. Donaldson’s interest was bought out and Gene and Paul Tibbets were contacted and included in the venture in April 1975, upon the contribution of a certain sum of money necessary to extend the purchase option upon the tract of land upon which River North was to be located.
In the course of the search for project financing, Newcomer was to obtain a standby or secondary commitment. Home State Savings Association, an Ohio corporation, was first contacted in July, 1975, by the venture’s broker, Harris Mortgage Company. Newcomer, Cofer and Sanford were identified as principals in the project, but neither Gene nor Paul Tibbets were so identified.
On August 7, 1975, a representative of Home State, Mark Ulrey, flew to Montgomery to make a site inspection as a part of his company’s consideration of the commitment. Ulrey met with Cofer who showed him the proposed site and two other local mobile home parks; within three hours he was on his way back to Ohio. It is alleged that Cofer was told that the site inspection was the last step and that a valid and bankable commitment would be issued in a matter of days.
Later in August, Cofer talked over the telephone with Tom Tiernan, another representative of Home State. According to Cofer, Tiernan told him that the commitment was ready and that to obtain it they should travel to Cincinnati, Home State’s office, and bring a cashier’s check for $25,-000. At this point, Cofer requested a copy of the commitment before he would take the money to Cincinnati, whereupon he was told that it was not the policy of Home State to issue a copy of the commitment in advance. The $25,000 was never delivered and the commitment was never issued. Soon afterward, the option on the land lapsed, whereupon the entire project fell through. Although informed of this fact by the Harris Mortgage Company, Home State says that it heard nothing else concerning the project until it received a copy of plaintiff’s amended complaint in September, 1976. Gene Tibbets and Paul Tibbets filed suit on July 23, 1976, naming James B. Cofer, John L. Donaldson, Bill N. Sanford, John F. Newcomer and fictitious parties as defendants. On September 20, 1976, the complaint was amended to change Cofer and Sanford from defendants to plaintiffs and to make Home State Savings Association a party-defendant, dropping the fictitious designations. In this amended complaint, the plaintiffs alleged that defendant Home State had represented to the plaintiffs that defendant Newcomer had proper financial standing to secure the commitment and that good, valid and proper commitments were in the process of being secured which were thereafter in effect. Plaintiffs further alleged that payments of several thousand dollars were made as a result of these representations. In the original complaint, plaintiffs alleged the date of discovery of this fraud to be around September 1, 1975, but they amended their complaint to change the date of discovery to around October 1, 1975.
Service was made upon Home State through the office of the Secretary of State. Home State filed motions seeking dismissal on the grounds of lack of personal jurisdiction and bar of the statute of limitations; each was denied. Home State then took depositions of all the plaintiffs which were filed with the court together with a motion for summary judgment to dismiss it as defendant, based upon the pleadings, the affidavits of its representatives and the depositions of the plaintiffs. In this motion, defendant again asserted as grounds, lack of jurisdiction.
Home State filed with the motion for summary judgment an affidavit of David Schiebel, Executive Vice President and Secretary of Home State. This affidavit was summarized by the trial court, as follows:
“Home State is not licensed to do business in the State of Alabama; it has no offices or branches in Alabama; it neither owns nor possesses any real property in the State of Alabama; it has no bank accounts or telephone listings in the State of Alabama. Rather, Home State’s sole *846 contact with the State of Alabama was on August 7, 1975, when a sole agent of the Defendant made a trip to the State of Alabama, lasting two and one-half hours, during which time he conducted a site inspection of the proposed River North project.”
The plaintiffs allege, as noted above, that while in Alabama, Home State’s representative, Ulrey, made a false representation to plaintiff Cofer which is, at least in part, the basis of their cause of action.
The trial court did not take this view, and granted the motion for summary judgment, dismissing Home State as a party-defendant. The court felt that the facts were insufficient to provide jurisdiction in an Alabama court under either 4.2(a)(2)(C) or (D) of the Alabama Rules of Civil Procedure.
We hold that dismissal of the defendant was erroneous and we reverse and remand. Mann v. Frank Hrubetz and Co., 77-287[MS], (decided August 4, 1978), Ala.Sup., 361 So.2d 1021.
REVERSED AND REMANDED.
TORBERT, C. J., and JONES, SHORES and BEATTY, JJ., concur.