Plaintiff-appellee Gordon K. Banzhoff, a franchisee of a corporation doing business in several states, obtained a judgment against the corporation and the appellant, the corporation's former director of licensing, in the amount of $26,500 on his suit for fraud.
Appellant Cortes Randell is the only defendant who appealed. He urges three grounds of error: (1) That the trial court did not have jurisdiction over him; (2) That the evidence failed to show an actionable case of fraud and deceit; and (3) That the trial court erred in assessing punitive damages under the facts and proof. Upon due consideration, we are of the opinion that appellant's contentions lack merit; and the judgment rendered on findings made by the trial court, sitting without a jury, is due to be affirmed.
Briefly, the facts are as follows:
Appellee, the franchisee, originally instituted this action in fraud and deceit against this appellant individually and as agent for International Trade Exchange, a District of Columbia corporation, which was also made a defendant, but which did not prosecute an appeal. I.T.E. organizes various local "exchanges", which, in turn, solicit businesses and professional persons to join and participate in a system by which goods and services are "bartered" between members. The local exchanges, which are franchised operations, act as clearinghouses for this barter activity, and charge a percentage as membership fees; I.T.E., in turn, sells franchises *Page 447 
and collects fees and royalties, while providing training, computer, and other services to member franchisees.
In September, 1977, appellee Banzhoff and one Rhodes entered into an agreement with I.T.E. headquarters in Virginia by which he and Rhodes would purchase the I.T.E. franchise for the Birmingham, Alabama, area, one of three such "territories" in Alabama. This deal was consummated, and appellee still operates the Birmingham franchise. There are some dispute as to whether appellee was in default on his agreements with I.T.E. concerning the Birmingham franchise, but that disagreement is not important here. In late January, 1978, appellee and Rhodes again entered into negotiations with I.T.E. through its president, one Dyer, and this appellant, Randell, who was, at the time, Director of Licensing, whereby they agreed to purchase the Orlando, Florida, franchise. The terms were $10,000 down payment, $15,000 due one month later and $15,000 due sixty days after the second installment. There was dispute as to whether the third installment was due thirty or sixty days later, but appellant agreed that it could have been sixty. The down payment and first installment were both paid, but the third installment never was.
At some point, Rhodes assigned his share in the enterprises to appellee; when this occurred, appellee testified he began to doubt his ability to actually administer the Orlando operation without a partner. In any event, the Orlando operation never was actually set up by appellee, and never operated under his ownership. Appellee testified that he contacted appellant in May, 1978, and requested that appellant sell the Orlando franchise for him. He claimed that appellant agreed and that in June, 1978, he had a buyer for the franchise, one Graves, and that appellee would soon be refunded a good portion of his original purchase price for the Orlando operation which was a company policy to avoid lawsuits by disgruntled ex-franchisees, according to appellant Randell. This money was not forthcoming, despite a later assurance in late June that the funds would be taken from a South Carolina deal. Appellee testified that he later found out by accident that one Sutter was running an Orlando franchise, and had been doing so since early June. Appellee also stated that he did not pay the last payment of $15,000 because this coincided with the negotiations with appellant Randell about the sale of the franchise and that he had not tried to sell the franchise himself, relying instead on appellant's representations.
Appellant testified that appellee was in default, that his franchise in Orlando had been terminated in mid-May, 1978, and that he (appellee) had been informed that the franchise would be re-licensed because appellee had not set up operations there. Appellant denied ever having promised or represented that he would sell the Orlando franchise, but admitted that it was company policy to refund a large portion of franchise fees to those franchisees who could not go through with the operation of a franchise. The trial court, at the close of this testimony found for appellee, and denied appellant's recovery on a counterclaim for breach of the license agreement.
 THE TRIAL COURT HAD JURISDICTION
Appellant's initial contention is that the trial court lacked jurisdiction over the defendants, because neither defendant had sufficient "minimum contacts" with this state to justify being subjected to jurisdiction. This contention is without merit.
The evidence shows that I.T.E. franchised appellee by means of a mailed contract; that I.T.E. advertised and solicited business in various newspapers, circulated a trade newsletter, and maintained a toll-free line into its Virginia offices; that I.T.E. performed all computer services and mailed statements from its headquarters; and that I.T.E. was admittedly profiting from the activities of the branches through "license fees" and "royalties". This pattern of activity is sufficient "minimum contact" within Alabama. Cf. Mann v. Frank Hrubetz Co., Inc.,361 So.2d 1021 (Ala. 1978); Tibbets *Page 448 v. Home State Savings Association, 362 So.2d 844 (Ala. 1978).
 SHOWING OF FRAUD
Appellant secondly contends that appellee failed to show an actionable case of fraud or deceit. It is, of course, axiomatic that where the trial court hears testimony ore tenus, that court's verdict will have the effect of a jury verdict and will not be disturbed on appeal unless "plainly and palpably wrong."Hill v. Abyssinia Missionary Baptist Church, 370 So.2d 1389
(Ala. 1979).
There is sufficient evidence to support the trial court's finding of fraud and deceit as defined by §§ 6-5-101 and6-5-103, Code 1975.
Taking the facts in a light favorable to appellee, he showed that appellant represented that he would sell the franchise; that he stated that, in fact, he had a buyer for the franchise; that, in fact, another franchise had been sold earlier to another investor in the Orlando area; that appellee relied on the representation to sell, and did not attempt to sell himself; that appellee is now damaged in that he is unable to sell the franchise without informing a prospective buyer that another franchise already exists in that area. The evidence was sufficient to show legal fraud or deceit. InternationalResorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977). This proof is sufficient to support the finding by the trial court of fraud and deceit by appellant in this transaction.
Appellant contends that the representation, if made, was at best only an opinion of appellant, and not actionable as a material existing fact. This argument may be disposed of by the words of this Court in Shepherd v. Kendrick, 236 Ala. 289,181 So. 782 (1938):
 "`It is material to observe that it is often fallaciously assumed that a statement of opinion cannot involve the statement of a fact. . . . If the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best involves very often a statement of material fact, for he impliedly states that he knows facts which justify his opinion.'"
Quoting, Kefuss v. Whitley, 220 Mich. 67, 189 N.W. 76 (1922);see also, Scholz Homes, Inc. v. Hooper, 287 Ala. 628,254 So.2d 328 (1971). In the instant case, any "opinions" of appellant in this regard were reasonably treated by appellee as existing facts. Cf. Fidelity Casualty Company of New York v. J.D.Pittman Tractor Company, 244 Ala. 354, 13 So.2d 669 (1943).
 PUNITIVE DAMAGES
Appellant's final argument is that the trial court was not justified in awarding any punitive damages to appellee under these facts. Appellee had claimed compensatory damages of $25,000. The judgment rendered was in an amount of $26,500. The award of punitive damages is largely discretionary with the court or jury. Winn-Dixie Montgomery, Inc. v. Henderson,353 So.2d 1380 (Ala. 1977). In misrepresentation cases, however, "they are usually restricted to instances where there is not only a knowing misstatement, but where the fraud is also gross, oppressive, or aggravated." Proctor Agency, Inc. v. Anderson,358 So.2d 164 (Ala. 1978). As to this latter standard, this Court has stated that "if the evidence tends to establish an intent to deceive and defraud, it is difficult to see but that a fraud was committed grossly." Hall Motor Company v. Furman,285 Ala. 499, 234 So.2d 37 (1970). Here, there was sufficient evidence from which the trial court could have reasonably concluded that the misrepresentations made by appellant were made with "legal malice, willfulness, or reckless disregard,"Loch Ridge Construction Company, Inc. v. Barra, 291 Ala. 312,280 So.2d 745 (1973). We do not find the trial court abused its discretion in awarding punitive damages. The judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 449 
 ON REHEARING