404 So.2d 26 (1981)
MOBILE DODGE, INC., a Corporation
v.
Patricia WATERS.
79-890.
Supreme Court of Alabama.
September 4, 1981.
Mylan R. Engel and Cynthia A. Cargile of Engel & Smith, Mobile, for appellant.
E. Graham Gibbons of Perloff, Reid & Gibbons, Mobile, for appellee.
BEATTY, Justice.
The defendant, Mobile Dodge, Inc., appeals from a judgment on a jury verdict finding it liable for intentional fraud and from the denial of its motion for new trial. We affirm conditionally.
The plaintiff, Patricia Waters, filed suit against Mobile Dodge in the Circuit Court of Mobile County claiming that she was intentionally defrauded by Mobile Dodge when it sold her a 1977 Dodge Van and misrepresented it as a 1978 model.
*27 The 1977 van arrived at Mobile Dodge from the Chrysler plant on February 2, 1978, along with three 1978 vans. The stockboy in charge of logging in the vans mistakenly listed the van as a 1978 model on the sticker. He testified that there is little or no difference in the appearance of 1977 and 1978 vans and he admitted making the mistake. He testified that he placed the erroneous sticker on the van himself. The salesman who sold Mrs. Waters the van testified that he relied on the sticker in selling the van and admitted that he told Mrs. Waters that it was a 1978 van since he believed that it was a 1978. The salesman filled out the buyer's order form and odometer form, both of which show the van to be a 1978 model. Based upon those forms, the insurance binder also shows the van to be a 1978 model. The written warranties and the emission control information, however, reveal the van to be a 1977. Also, the manufacturer's certificate of origin shows the van to be a 1977. The finance manager in the office of Mobile Dodge uses the manufacturer's certificate of origin when filling in the bill of sale, the application for title (which was signed by Mrs. Waters) and other papers. These papers, then, correctly show the van to be a 1977. In addition, the motor vehicle registration and tax receipt from the License Commissioner of Mobile County reflect that the van was a 1977 model, since that office uses the information from the application for title.
Mrs. Waters did not discover the problem until a month and a half after she purchased the van when she received the certificate of title in the mail. It correctly showed the van to be a 1977. She contacted Mobile Dodge and an agent for the corporation offered to swap her 1977 van for a 1978 van of the same specifications. Mrs. Waters filed suit later that month. She sought compensatory and punitive damages. The jury returned a verdict for Mrs. Waters for $17,700.00. After its motions for judgment notwithstanding the verdict or, in the alternative, a new trial were denied, Mobile Dodge appealed.
Mobile Dodge contends that the evidence is not supportive of any verdict and judgment against it or, in the alternative, that the evidence presented to the jury cannot support an award of punitive damages. We agree with the contention as it relates to punitive damages.
Initially, we note that a jury's verdict is presumed to be correct, and will not be set aside as excessive, unless the amount is so great as to plainly indicate that it was the result of passion, bias, prejudice or improper motive. Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, Ala., 394 So.2d 912, 915 (1981). This presumption, as to the correctness of jury verdicts, is strengthened when the trial judge refuses to grant a motion for new trial. S. S. Kresge Co. v. Ruby, Ala., 348 So.2d 484, 488 (1977). An appellate court will, however, revise a jury's verdict or judge's findings if it is "convinced by a preponderance of the evidence that the verdict is wrong and unjust." Palmer v. Palmer, Ala., 390 So.2d 1050, 1052 (1980).
To reverse a trial court, then, an appellate court must be convinced that the verdict and judgment are contrary to the preponderance of credible evidence and are, therefore, palpably wrong and manifestly unjust.

I. INTENTIONAL FRAUD
The jury, by finding Mobile Dodge liable for intentional fraud, must have found that there was a misrepresentation of a material fact made willfully to deceive and that Mrs. Waters relied upon that fact to her detriment. Code of 1975, § 6-5-101. The record clearly reflects that whether the van in question was a 1977 or 1978 model was a material fact and that Mrs. Waters purchased the van believing it to be a 1978 model. The jury resolved the factual dispute of whether the misrepresentation was intentional in favor of Mrs. Waters and we will not disturb that finding. As a result, Mrs. Waters is entitled to recover the difference in value between a 1977 and a 1978 van.

*28 II. PUNITIVE DAMAGES
The jury awarded $17,700.00 to Mrs. Waters. According to the evidence the difference in the average retail price between a 1977 van and a 1978 van is approximately $1,000.00. Thus, a substantial portion of the award encompasses punitive damages.
Three essential elements must be found in order to support an award of punitive damages. The first two elements are the same as those comprising intentional fraud; namely, a material misrepresentation made knowingly and falsely and reliance thereon by the injured party. The third element, which is the crucial and dispositive one regarding this appeal, is that the fraud must be gross, malicious, oppressive and committed with the intent to injure. Huntsville Dodge, Inc. v. Furnas, Ala.Civ.App., 361 So.2d 585, 589 (1978); Proctor Agency, Inc. v. Anderson, Ala., 358 So.2d 164, 165 (1978).
Although there may be enough evidence in any given case to find fraud, as legally defined, that finding is not sufficient, in and of itself, to support an assessment of punitive damages against the offending party. To uphold the verdict against a motion for new trial the evidence, and the inferences which may be drawn therefrom, must show that the fraud was gross, oppressive or aggravated. Randell v. Banzhoff, Ala., 375 So.2d 445, 448 (1979). This rule has been followed by our courts in numerous cases involving misrepresentations in the sale of motor vehicles. See, e. g., Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970); Harrelson v. Gowin, Ala.Civ.App., 348 So.2d 789 (1979); Shafer Chevrolet v. Hires, Ala.Civ.App., 347 So.2d 1358 (1975). In each of these cases the plaintiff was allowed to recover only actual damages for the misrepresentation made in the sale of the automobile. Punitive damages were not allowed, for there was no showing that the misrepresentation was gross, malicious, oppressive and made with the intent to deceive.
The determination of whether the misrepresentation is malicious so as to authorize the award of punitive damages is dependent upon the facts of the particular case. A comparison of the facts in this case with those in Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, Ala., 394 So.2d 912 (1981), helps to illustrate the degree of fraud necessary to warrant punitive damages. In Crews, the jury awarded $30,000.00 in compensatory and punitive damages to a plaintiff who was sold a six cylinder automobile which she believed to be an eight cylinder. The verdict in that case was held not to be excessive. The evidence supporting a finding of intentional fraud and an authorization for awarding punitive damages, however, was stronger in Crews than the evidence presented in the instant case. The plaintiff in Crews had repeatedly requested an eight cylinder car. After telling the plaintiff that the car in question was an eight cylinder, the dealer himself typed the number "8" in the space on the application for title for the number of cylinders. That active misrepresentation by the dealer at the time of the sale clearly indicated gross and malicious fraud with an intent to deceive. In the case at bar, however, it was the stockboy, not the dealer who made the initial incorrect listing of the van. And although the jury could have inferred fraud from the acts which followed, there is not evidence of any malice involved at the time of the sale. Thus, without such malice or oppressiveness, an award of punitive damages was not warranted.
The evidence in this case supports an award of compensatory damages only. We, therefore, require a remittitur of $16,700.00 of the damages as a condition to an affirmance of the order denying defendant's motion for a new trial. In the event the appellee declines to file the required remittitur with the clerk of this Court within twenty-one days from the date of this opinion, the judgment will be reversed and the cause remanded for a new trial. Otherwise the judgment as corrected on remittitur will be affirmed.
AFFIRMED CONDITIONALLY.
MADDOX and SHORES, JJ., concur.
TORBERT, C.J., and JONES, J., concur specially.
*29 TORBERT, Chief Justice (concurring specially).
I concur with the statement in the main opinion as to the applicable rule of law respecting the three essential elements necessary to sustain an award for punitive damages. A finding that fraud was "knowingly" or "intentionally" committed, without more, is not sufficient to sustain an award of punitive damages. In addition to a finding of intentional fraud, the rule is that punitive damages may not be recovered unless the fraud be gross, malicious, oppressive, and committed with intent to injure. Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24 (1961); Proctor Agency, Inc. v. Anderson, 358 So.2d 164 (Ala. 1978); United States Fidelity and Guaranty Co. v. McKinnon, 356 So.2d 600 (Ala.1978).
However, some of our cases have not been entirely clear on this point. In Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970), we find the following statement of the Court by way of dictum:
If the evidence tends to establish an intent to deceive and defraud, it is difficult to see but that a fraud was committed grossly.
Hall Motor Co. v. Furman, 285 Ala. at 504, 234 So.2d 37.
This statement has been recently cited with authority in Randell v. Banzhoff, 375 So.2d 445 (Ala.1979), and in Shiloh Construction Co. v. Mercury Construction Corp., 392 So.2d 809 (Ala.1981), the former by direct quote from Hall Motor Co., and the latter case as follows:
Once an intent to deceive has been established it is difficult to see but that a fraud was committed grossly.
Shiloh Construction Co. v. Mercury Construction Corp., 392 So.2d at 814.
The main opinion in this case, with which I concur, should settle the law now. A person can commit a fraud "knowingly," but lacking the intention to injure and defraud. Also, one can commit a fraud "knowingly," but without grossness, maliciousness, or oppressiveness. Each case, reviewed on appeal by this Court, is dependent upon an analysis of the pertinent facts, i. e., the evidence admitted and the reasonable inferences drawn therefrom.
Having agreed as to the law, I disagree with the conclusion that the jury could have properly found that the alleged fraud was "intentional." Under the undisputed evidence in this case, and as summarized in the main opinion, the only actionable fact which could have constituted fraud was the error of the stockboy in placing a sticker on the van indicating it to be a 1978 model rather than a 1977 model. There was no contact between the stockboy and the plaintiff. The salesman relied on the sticker in his negotiations with plaintiff, and filled out a buyer's order form and the odometer form relying on the sticker. However, other employees of the defendant, using the manufacturer's certificate of origin and other sale documents, prepared the bill of sale and the application for certificate of title (and other documents), which correctly described the van as a 1977 model.
There is simply no evidence of an "intentional" fraud. I would hold as a matter of law that this misrepresentation was made by mistake and innocently, but, being acted on by the opposite party, constituted legal fraud. See, Code 1975, § 6-5-101. Legal and not "intentional" fraud having been committed, plaintiff was entitled to compensatory damages only.
JONES, Justice (concurring specially).
I concur specially in order to emphasize, and hopefully to clarify, the burden of proof with respect to punitive damages pursuant to Code 1975, § 6-5-103.
Bad faith, the gravamen of this action, means fraudulent intent; and punitive damages will lie where one is in fact injured by the tort of willful deceit of another who intends by his conduct to injure. The language of the cases to the effect that punitive damages may not be awarded unless the conduct is "gross," "oppressive," and "committed with the intent to deceive," is not to be interpreted as requiring two separate elementsintent to deceive coupled with malice and oppressiveness. These *30 descriptive terms assist the fact finder in its determination of whether the alleged culpable conduct measures up to the statutory requisite element of "intent to deceive." When the trier of fact has sufficient evidence from which to reasonably infer gross, oppressive and malicious commission of the fraud, it likewise has sufficient evidence to support a finding of willful misrepresentation of a material fact made with the intent to induce another to act to his injury. As the Court of Civil Appeals, per Judge Holmes, said in Long-Lewis Hardware Co. v. Lightsey, 392 So.2d 545 (Ala.Civ.App. 1980):
"In an action for fraud an award of punitive damages may be based upon a showing of entitlement to nominal damages. Old Southern Life Insurance Co. v. Woodall, Ala., 348 So.2d 1377 (1977); Shaffer v. Timmons [51 Ala.App. 157, 283 So.2d 609] supra; Maring-Crawford Motor Co. v. Smith [285 Ala. 477, 233 So.2d 484] supra. Punitive damages, in the jury's discretion, may be awarded if there is evidence from which the jury can conclude that the fraud was malicious, oppressive or gross and the representations were made intentionally and with the knowledge of their falsity. Spartan Pools v. Royal, Ala., 386 So.2d 421 (1980); Royal Chevrolet Co. v. Kirkwood, Ala.Civ. App., 373 So.2d 858 (1979). The primary constituent of gross, malicious, and oppressive fraud is the intention to injure and deceive. Universal Brokers, Inc. v. Higdon, Ala.Civ.App. [56 Ala.App. 184] 320 So.2d 690 (1975). Put another way, if the evidence tends to establish an intent to deceive and defraud, it is difficult to see but that a fraud was committed grossly. Spartan Pools v. Royal, supra; Randell v. Banzhoff, Ala., 375 So.2d 445 (1979); Hall Motor Co. v. Furman, 285 Ala. 499, 235 So.2d 37 (1970)."
Indeed a party may be exceedingly nice (even a perfect gentleman) in his conduct toward the party defrauded and possess all of the malice and oppressiveness contemplated under our willful deceit statute. Conduct which rises to the level of affording a cause of action under § 6-5-103 necessarily rises to the level of conduct authorizing punitive damages. The gravity and enormity of that conduct (that is, the extent and degree of its grossness, maliciousness and oppressiveness) is the test by which the factfinder exercises its prerogative to award punitive damages and the yardstick for its measurement of the amount of the award.
The instant case falls short of one authorizing punitive damages, not because the intent to deceive is unaccompanied by gross and oppressive conduct, but because of the absence of another essential statutory element "a knowledge of the falsehood." Although a fact is misrepresented, it will not support an action for willful deceit unless made with knowledge of its falsity; and such knowledge, as statutorily defined, must be coupled with an intent to deceive.
I concur with the majority that the Plaintiff in the instant case is not entitled to punitive damages. I understand fully why she felt that she had been tricked and made a victim of a willful scheme. The totality of the evidence, however, overwhelmingly supports the contrary conclusion. Once the stockboy made the initial error by tagging the van as a 1978 model, the next series of acts by the Defendant in the sale of the van to the Plaintiff fell naturally into the same erroneous pattern. When the in-office records were used by the company personnel in drafting the sales papers and the certificate of title application, the correct model number was used consistently. On the Plaintiff's initial contact with the Defendant following the sale, the Defendant immediately offered to substitute a 1978 model van for the 1977 model. While it may be said that none of these facts conclusively proves the absence of fraudulent intent, their weight and preponderance overwhelmingly bespeak of inadvertence, mistake and innocent error. Given the element of willful misrepresentation with knowledge of its falsity (i. e., fraudulent intent), the remaining requisite elements warranting punitive damages flow naturally from the facts of this case.
*31 A simple hypothesis, only slightly different from the instant facts, will illustrate the point: Suppose a car salesman had affirmatively represented a 1977 model vehicle as a 1978 model, sold it to a plaintiff as a 1978 model, and then sought to defend on the basis that a previous owner, who traded it in on another vehicle, had represented to the retailer that it was a 1978 model. In other words, the seller defends a willful deceit claim on the grounds of lack of knowledge of the falsity of its representation.[1] Under the facts as hypothesized, such a defense overlooks the last sentence of § 6-5-103:
"A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."
The retailer's superior knowledge and easy access to the facts cannot excuse its ignorance of the truth, and the factfinder would be justified in concluding from the hypothesized evidence that all of the elements of willful deceit, as statutorily defined, existed and that punitive damages were warranted. While the factual difference between the instant case and the one here hypothesized is slight, it is a material difference to the point of authorizing punitive damages in the one and not in the other.
The element of the knowledge of the falsity includes not only misrepresentations made with actual knowledge but also those misrepresentations made recklessly without knowledge. Shiloh Const. Co., Inc. v. Mercury Const. Corp., 392 So.2d 809 (Ala.1980). In the instant case the evidence will not support a finding of knowledge of either species. In the hypothesized case, however, the evidence would clearly support a finding of a misrepresentation so recklessly made as to be tantamount to a material misrepresentation made with the intent to deceive the other party; and, if the other party relies thereon to his detriment, punitive damages may be awarded.
NOTES
[1] Such a defense, if valid, would defeat a claim for punitive damages under § 6-5-103, but would not preclude recovery of actual or compensatory damages under § 6-5-100.