BRADLEY, Judge.
This is a fraud case involving the sale of real estate.
Jack M. Parker and Eulalia Parker sued Sealy Realty and others for fraud. The other parties were dropped from the suit. The jury found for the Parkers and awarded them $3,112.50 compensatory damages. The trial court refused to give the Parkers’ requested jury charge on punitive damages. From this refusal the Parkers appeal.
Viewing the record with the attendant presumptions, the following is revealed:
In 1981 the Parkers decided to sell their house in Duncanville, Alabama and move closer to town and, thus, closer to their doctors and their hospital. Mr. Parker had been hospitalized extensively during the past several years and was retired from B.F. Goodrich on total disability. Mrs. Parker had had one kidney removed, back surgery, two strokes, a blocked artery in an arm, surgery on a hand, and some nerve damage to one of her shoulders.
The Parkers contacted Sealy Realty to market their house, having done so several times before. They dealt with Ken Faught, with whom they had also had previous dealings. They trusted Faught, since he had been the agent who sold them their house in Duncanville, and told him that they not only wanted him to sell their house but that they also wanted him to help them find a house that was new or less than seven years old and in or near town.
*417 The Parkers, with Faught’s help, sold their Duncanville house and had less than two weeks in which to find a new one and move into it. Faught showed them several houses. Mrs. Parker again made it clear to Faught that she was interested only in a house that was new or less than seven years old, since with Mr. Parker’s age and infirmity he would not be able to manage all the repair work that an older house was likely to need.
Faught showed them several houses older than seven years, and each time Mrs. Parker reasserted that she wanted a new house or one not more than seven years old.
Mr. Parker became ill with pneumonia and had a 103° fever during this period. Since they had to move so quickly, however, he refused hospitalization, which his doctor recommended, in order to look for a house.
On Monday, October 19, 1981, the Par-kers visited Faught at the Sealy Realty offices. Faught allowed the Parkers to look at and take home his copy of the Multiple Listing Service book (the book). There was testimony that the book was not intended to be used by the general public and that, in fact, not all members of the real estate community even had access to it. There was testimony that the book was generally considered by the real estate community to be unreliable and it contained a warning on its front cover that: “INFORMATION HEREIN DEEMED RELIABLE BUT NOT GUARANTEED. CONFIDENTIAL. FOR AUTHORIZED MULTIPLE LISTING MEMBERS ONLY.” On the table of contents it contains this warning:
“This publication is not to be used as the basis for any representation concerning any property listed herein. Listed properties contain general information which is deemed sufficient to broadly inform the member as to its potential suitability. THERE IS NO WARRANTY AS TO THE ACCURACY OF THE INFORMATION HEREIN. THE MULTIPLE LISTING SERVICE ASSUMES NO LIABILITY FOR ANY INACCURATE INFORMATION. Any subscriber using this book should verify the information herein to determine its reliability.” (capitals in original; emphasis added) .
Although the Parkers were aware of the existence of this type of book before Faught loaned them his copy, they had no idea how to use it and had never before seen this copy of the book. They were allowed to take it home to look at at their leisure to see if they could find a house they liked. No effort was made to show them the warnings or disclaimers.
The Parkers took the book home and found a house that the book listed as being in the location they needed and seven years old. The house, in fact, was thirteen years old. It had been listed as seven years old mistakenly due to a clerical error on the part of the listing agency, Johnson-Smith Realty, Inc. Faught took the Parkers to see the home. He knew they thought it was seven years old.
The Parkers looked at the home and liked it. Mrs. Parker asked about the condition of the appliances in the house and was reassured by Faught that they should be in good condition since the house was only seven years old.
Faught made no attempt to verify the age of the house, though it was common practice in the industry to do so and he was aware of this and of the unreliability of the book.
The Parkers closed the sale and purchased the house. Shortly thereafter, they moved into it. Mr. Parker decided to build a storm pit. In late January the Health Department went to the Parkers’ home to check their field lines. Only then did the Parkers discover that their house was thirteen years old.
The Parkers testified that they would not have purchased the house had they known it was thirteen years old, and that they relied on Faught to help them with the purchase.
The Parkers contend that under these facts the trial court should have given the *418 requested jury charge on punitive damages. We agree. The issue before this court is a narrow one: whether the trial court erred in refusing to charge the jury on the issue of punitive damages once it had charged them that they could award compensatory damages only if they found the defendant acted so recklessly in misrepresenting a material fact as to equate recklessness with knowledge of falsity.
The standard for punitive damages under Alabama law has not been a model of clarity. See Commentary, Punitive Damages & Fraud: Alabama’s Deceptive Standard, 35 Ala.L.Rev. 101 (1984).
Under the foregoing facts the trial court erred in not giving the requested punitive damages charge. In Ex parte Smith, 412 So.2d 1222 (Ala.1982), the Alabama Supreme Court enunciated the standard for when punitive damages are allowed in fraud cases. The court held that:
“ ‘Exemplary damages, if recoverable at all, may be recovered only in cases where the wrongful act complained of is characterized by, or partakes of, some circumstances of aggravation, such as ... gross negligence_
“ ‘One or more of the conditions under which exemplary damages are recoverable is sufficient_ Exemplary damages may be also recovered, although there is no malice, fraud, or intent to oppress on the part of the wrongdoer, if the act is done in a ... reckless manner, in disregard of social obligations

Id., citing 22 Am.Jur.2d Damages § 249 (1965) (first emphasis theirs; other emphasis added).
The jury was charged under Alabama Pattern Jury Instructions, 18.02, that:
“Now, as to fraud: Under the law, Article 8 in the Code of Alabama provides for and defines fraud. • The Code of Alabama provides for several different types of fraud, one of which is based upon reckless misrepresentation as alleged by the plaintiffs in this case. Alabama law says a reckless misrepresentation is when a person misrepresents a material fact recklessly, without knowledge of the truth or falsity, and with the intent to induce the plaintiff to act, and that the plaintiff acts upon said reckless misrepresentation to his injury. Then, the defendant is guilty of or has committed the offense of fraud.

“In summary, with respect to the liability aspect, you must determine this: Was there a misrepresentation by the defendants here? Second, if so, was the misrepresentation made recklessly so as to equate knowledge of its falsity; and, third, if so, was it made with the intent to induce the Parkers to act; four, if so, did the Parkers rely on the statement to the extent that it did induce them to act; five, if so, did it result in damage to the claimant.” (emphasis added)
When the jury found for the Par-kers, they thereby also found that Sealy was guilty of reckless misrepresentation. When there is reckless misrepresentation, which is equated to intent to deceive, the jury can award punitive damages. Ex parte Lewis, 416 So.2d 410 (Ala.1982). Even when there is no knowledge that a representation is false, when it is made “so recklessly and heedlessly as to amount to the same thing as knowledge of its falseness,” punitive damages are recoverable. Ex parte Smith, supra. See also, Gulf Shores, Ltd. v. Powrzanos, 442 So.2d 71 (Ala.1983); Lapeyrouse Grain Corp. v. Tallant, 439 So. 105 (Ala.1983); Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala.1982); Randell v. Banzhoff 375 So.2d 445 (Ala.1979).
In Cooper Chevrolet, Inc. v. Taliaferro, 439 So.2d 158 (Ala.Civ.App.1983), the court held:
“In other words, actual knowledge of the falsity of the representation is not a requisite to recovery of punitive damages in cases involving reckless misrepresenta *419 tions. If the evidence shows that the representations were made without knowledge, but made so recklessly as to amount to knowledge of the falsity the jury is authorized to award punitive damages.”
Representations were made to the Parkers by Faught, through the book and by his direct statements, that the house was seven years old. The evidence presented at trial and reasonable inferences drawn from it show that Faught knew the listing book to be unreliable and that, as the book itself says, all information in it should be verified before being given to potential purchasers. Yet Faught, armed with this warning, made no effort to verify the information, though it could have been accomplished through a local telephone call and though he knew this aged, infirm couple was relying on him to help them find a home with specific requirements to meet their particular needs.
The evidence that there existed a close relationship between the agent and buyers, that the agent was aware of the buyers’ reliance on him, and that the agent could have easily verified the age of the house would have supported a jury finding that Sealy acted heedlessly and recklessly. Thus, the refusal to submit to the jury the issue of punitive damages precluded it from considering the question. Such refusal requires a reversal of the trial court’s judgment. However, this conclusion should not be construed to mean that the evidence adduced in this case requires the jury to award punitive damages. We said in Cooper Chevrolet, Inc. that the award of punitive damages in certain eases of fraud is within the discretion of the jury, and it is for the jury to decide whether to impose punitive damages based on the enormity of the wrong and the necessity of preventing similar wrongs.
REVERSED AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.