475 So.2d 835 (1985)
AMERICAN HONDA MOTOR COMPANY, INC., a corporation
v.
Donna M. BOYD.
83-1053.
Supreme Court of Alabama.
July 3, 1985
Rehearing Denied August 30, 1985.
*836 Robert M. Girardeau, Birmingham, for appellant.
J. Earl Smith, Dothan, for appellee.
ADAMS, Justice.
This is an appeal by defendant, American Honda Motor Co., Inc. (American Honda), from a judgment entered on a jury verdict which required defendant to pay $65,000.00 damages to plaintiff, Donna Boyd. We affirm.
Boyd purchased an automobile which she thought was new, but which she later discovered had been damaged and repaired prior to sale. More precisely, Donna Boyd *837 and her husband went to the Smith Brothers Toyota dealership seeking a new car. After looking at a Honda Accord and test driving it, the Boyds decided to buy the car. This decision was made even though the car had not been cleaned up, and still had the protective film on it.
Subsequent to purchase, Boyd's husband noticed a rattle in the passenger-side door and window. Boyd found that it was difficult to open that door or to roll the window up and down. Also, Boyd's husband noticed that the paint on the passenger side of the car did not seem to match. He took the car to a body repair shop, and was informed that the car had been damaged and repaired. Based upon this information, Boyd's husband took the car back to Smith Brothers Toyota in an attempt to receive an adjustment in the purchase price, or a new car. He talked with Tom Smith at Smith Brothers, who, after having been shown the problems with the car, called the distributor, American Honda, to find out what had happened. American Honda informed Smith that en route to the United States the car had been damaged, but that it had been repaired at the port of entry prior to its shipment to Smith Brothers. Tom Smith testified that he was advised by American Honda to satisfy the customer and notify it if a reasonable solution could not be reached.
Smith and the Boyds could not agree upon a solution that was satisfactory to both parties, and, as a result, Donna Boyd filed suit against Smith Brothers Toyota and American Honda, seeking money damages based on fraud and deceit and breach of warranty. At the close of the evidence, Smith Brothers Toyota filed a motion for directed verdict, which was granted by the court. The jury then returned a verdict, against American Honda for $65,000.00. Judgment was entered in accordance with the verdict. American Honda filed a motion for judgment notwithstanding the verdict and a motion for new trial, which the court denied. This appeal followed.
Appellant American Honda raises three issues for our review:
I. Whether plaintiff proved a case of intentional fraud and deceit, thereby supporting the award of punitive damages;
II. Whether evidence of a breach of warranty supported plaintiff's recovery against American Honda;
III. Whether the trial court committed reversible error with regard to certain rulings and charges.

I.
American Honda argues that this case should fall within the narrow exception discussed by this Court in Boulevard Chrysler-Plymouth, Inc. v. Richardson, 374 So.2d 857 (Ala.1979). In that case the appellant/car dealer argued that this Court should adopt an objective legal definition of "new car," specifically "a motor vehicle for which there has been no prior retail purchaser and which has not suffered a substantial collision with another vehicle or object." In response, this Court stated:
Not only do we decline to adopt Appellants' proposed definition of "new car," we feel that a legal definition is ordinarily unnecessary to the orderly disposition of these cases. Admittedly, extreme facts can be posed at either end of the issue, where, in one case, the car is undisputedly a new car (e.g., minor adjustment or repair which does not alter the car's condition from that normally and reasonably expected by a "new" car purchaser); while, at the other extreme, the car is obviously not "new" (e.g., a previous owner or major alterations and repairs resulting from the wreck of the vehicle).
We are not saying that in certain extreme circumstances the courts should not apply an objective legal test as determinative of the "new car" issue, though we think the occasion for such application would be exceedingly rare. Ordinarily, the issue will be a factual one. Such is the case here. From the evidence, the jury was justified in concluding, "in accordance with reasonable expectations" *838 standards, that this car was not new.
374 So.2d at 859.
American Honda asserts that, according to the facts of this case, the car should be declared a "new car," as only minor repairs had been made and they did not affect the value of the car. We disagree. Although there was evidence presented that the actual cost of the repairs to the automobile was $172.00, the Boyds offered expert testimony that the cost to properly repair the car would be approximately $550.00 to $600.00. The jury also heard expert testimony that the damages to this vehicle would be classified as major, rather than minor, damages. Finally, the jury had the opportunity to view the passenger-side door from the car to determine for itself the quality of the repairs that had been performed and the extent of the damage to the automobile.
In light of the foregoing, and our hesitance to adopt a categorical definition of "new car," we are of the opinion that the jury had sufficient evidence before it to determine that the subject automobile was not a "new car." Since the question of whether the car, after being damaged and repaired, was in fact a "new car" was properly submitted to the jury for determination based upon the evidence presented, we focus our attention on whether the jury's award of punitive damages was supported by the evidence.
American Honda argues that, for the jury to receive the issue of punitive damages, there must be proof that American Honda knowingly and intentionally made a false statement of a material fact with an intent to injure Donna Boyd and that such misrepresentation was gross, malicious, or oppressive. This, however, is not an accurate statement of the law in Alabama.
This precise issue was discussed thoroughly in the case of Ex parte Lewis, 416 So.2d 410 (Ala.1982), wherein Justice Jones, in his special concurrence, stated:
The elements which, when proved, sustain an action in deceit and the concomitant recovery of punitive damages, are set out at § 6-5-103, which states in part:
"Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action.... In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."
....
Deceit, ... as contemplated by § 6-5-103, is an intentional tort which, when proved to the satisfaction of the finder of fact, will support an award of punitive damages. International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala.1977). Absent an initial finding of the essential element of "knowledge of a falsehood," however, there can be no determination of an intent to deceive; and, therefore, the factfinder would be precluded, as a matter of law, from awarding punitive damages. See Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala.1981).
It is the finding of intent to deceive, which must be based upon the initial finding of knowledge of the falsity of the material representation, that triggers the discretionary power of the factfinder to award punitive damages. It is a misinterpretation of the cases to require that the incidents of grossness, oppressiveness, and maliciousness be found as additional elements to be superimposed upon the statutory requisite of intent to deceive, in order to warrant punitive damages.

This is the reason for the clarifying language in Shiloh Construction Co., Inc. v. Mercury Construction Corp., 392 So.2d 809 (Ala.1980):

"Once an intent to deceive has been established it is difficult to see but that a fraud was committed grossly. Randell v. Banzhoff, 375 So.2d 445 (Ala.1979); Hall Motor Co. v. Furman, *839 [285 Ala. 499, 234 So.2d 37 (1970)]. [Emphasis added.]"
416 So.2d at 411-413.
It is well settled, therefore, that if the evidence establishes an intent to deceive or defraud, then punitive damages are recoverable. Courtesty Ford Sales, Inc. v. Clark, 425 So.2d 1075 (Ala.1982); Big Three Motors, Inc. v. Smith, 412 So.2d 1222 (Ala.1982). This principle was espoused over 100 years ago in the case of Munroe v. Pritchett, 16 Ala. 785 (1849), where this Court held that punitive damages are justified if a misrepresentation is made by one knowing that it is false.
In the case before us, it is undisputed that American Honda represented that the subject automobile was a "new car," when it in fact had suffered what has been termed "major" damage. Once the jury found that the car was not a "new car," it was not difficult then to find that American Honda was guilty of intentionally misrepresenting the condition of the car to the Boyds.
It has long been the rule in Alabama that jury verdicts carry with them a presumption of correctness, and that this presumption is strengthened when the trial court denies a motion for new trial. Carroll Kenworth Truck Sales, Inc. v. Leach, 396 So.2d 1044 (Ala.1981); Walker v. Cardwell, 348 So.2d 1049 (Ala.1977). American Honda has failed to convince this Court that we should abandon this rule in the instant case. Therefore, we are of the opinion that the jury's award of punitive damages was justified.

II.
American Honda next argues that there was a complete lack of evidence to support a verdict based on a breach of warranty claim. We disagree.
Mike Boyd, Donna Boyd's husband, testified that he told the salesman at Smith Brothers Toyota, Bob Christensen, that he was interested in buying a new car. Christensen then took the Boyds to the "new car" lot. At no time did they go across the street to the lot where the used cars were located. The car that the Boyds finally purchased had all the indicia of a new car. It had the new car sticker on the window, which listed the information normally found on a new car, such as price and available options. The Boyds were given a new car warranty upon purchase. Also included in the new car package were tire warranties and rust protection warranties. The Boyds also were given the owner's manual. Mike Boyd testified that the car even smelled new. In addition, all the negotiations concerning the price of the car were based on the representations that it was a new car. After having the car for a short time, the Boyds discovered that the car had suffered damages which had necessitated major repair work. They subsequently returned to Smith Brothers Toyota in an attempt to rectify the problem. We are of the opinion that there was sufficient evidence presented to support Donna Boyd's claim for breach of the warranty that the car was new.
American Honda argues that it is not liable to Boyd because it was not notified of the defects, and was not given an opportunity to cure them, both of which it says are required by Code 1975, §§ 7-2-607 and -608. As to American Honda's first contention, it is undisputed that American Honda was made aware of the problems as soon as the Boyds took the car back to Smith Brothers Toyota. Tom Smith testified that American Honda was immediately contacted. It was at this time that American Honda explained how the car had been damaged and repaired. Thus, American Honda had notice of the Boyds' problem with the car.
Regarding the opportunity to cure, the pertinent part of § 7-2-607 states:
Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity *840 would be seasonably cured, but acceptance does not of itself impair any other remedy provided by this article for nonconformity. [Emphasis added.]
Section 7-2-608(1) also addresses this issue. It reads:
(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
It is undisputed that Boyd purchased the car without knowledge of the damages; therefore, the only language cited above which applies in this case is that of § 7-2-608(1)(b), which says nothing about the opportunity to cure. Therefore, American Honda's reliance on these two statutes is not well founded.

III.
American Honda's assertions that the trial court committed reversible error concerning certain of its evidentiary rulings and jury charges, we do not find supported by the record. We, therefore, pretermit discussion of each of American Honda's claims in this regard.
For all of the above-stated reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., dissents.
TORBERT, Chief Justice (dissenting).
Consistent with my dissenting opinion in Ex parte Lewis, 416 So.2d 410, at 415 (Ala. 1982), I must respectfully dissent in this case. The law as to punitive damages for deceit and fraud is far from being well settled in this state; as my dissent in Ex parte Lewis outlined, this Court has set forth several standards for the awarding of punitive damages and continues to mystify the bench and bar by failing to adopt one clear standard that properly takes into account the purpose and gravity of punitive damage awards. The standard "that if the evidence establishes an intent to deceive or defraud, then punitive damages are recoverable" defeats the purpose of punitive damages, which are intended to punish and deter gross, malicious, or oppressive conduct that is coupled with an intent to deceive or defraud. Simply proving an intent to deceive or defraud is not enough to warrant the extraordinary award of punitive damages. This Court has long followed "the gross, malicious or oppressive conduct with an intent to deceive or defraud" test. See, Gulf Shores, Ltd. v. Powrzanos, 442 So.2d 71 (Ala.1983); Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala.1981); Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 (Ala. 1981); Spartan Pools v. Royal, 386 So.2d 421 (Ala.1980); Randell v. Banzhoff, 375 So.2d 445 (Ala.1979); Proctor Agency, Inc. v. Anderson, 358 So.2d 164 (Ala.1978); United States Fidelity & Guaranty Co. v. McKinnon, 356 So.2d 600 (Ala.1978); Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976); Ringer v. First National Bank of Stevenson, 291 Ala. 364, 281 So.2d 261 (1973); Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24 (1961); Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909 (1954); Southern Building & Loan Association v. Bryant, 225 Ala. 527, 144 So. 367 (1932). The Court should not now abandon by implication such a longstanding test for punitive damages, especially without an in-depth analysis of the purposes behind, and the needs for, punitive damages.
The majority opinion states that its "intent to deceive or defraud" test was set forth in Munroe v. Pritchett, 16 Ala. 785 (1849), "where this Court held that punitive damages are justified if a misrepresentation *841 is made by one knowing that it is false." This is an incorrect statement of Munroe, for in that case punitive damages were never mentioned; the Court talked only of "damages." 16 Ala. at 789. In addition, this Court has interpreted the language in Munroe as applying to compensatory damages. As the Court stated in Gibson v. Marquis, 29 Ala. 668, 673 (1857):
"[T]he defendant was entitled to recover, at law, damages which the law was capable of measuring accurately by a pecuniary standard. Munroe v. Pritchett ... is an authority that an action could have been maintained at law for the misrepresentations alleged in the two special pleas, and the law prescribes the measure of damages in such cases.... The measure of damages, in such case, would be the difference between the value of the tract of land as it actually was, and its value if it had been as represented."
Also, in Crown v. Carriger, 66 Ala. 590, 593 (1880), this Court expressed the measure of damages as "the seller shall make the representation good, Munroe v. Pritchett...." Munroe does not stand for the test that the majority sets forth in this case. In my opinion, the acts of American Honda do not amount to "gross, malicious or oppressive" conduct.
I question another aspect of the majority opinion. The opinion states that the seller has no right to cure a defect after revocation of acceptance under § 7-2-608(1)(b). I do not believe that this apparent question of first impression can be disposed of by merely noting that § 7-2-608(1)(b), unlike § 7-2-608(1)(a), does not mention the right to cure. Generally, when a buyer rejects the goods of a seller, the seller has a right to cure the defect giving rise to rejection. Code 1975, § 7-2-605. (See also the comments to this section). Revocation of acceptance can be viewed as a delayed rejection, which would give rise to the same right of the seller to cure certain defects. Indeed, we have recognized that a right to cure exists when revocation of acceptance occurs under § 7-2-608(1)(a); Dickson v. U-J Chevrolet Company, Inc., 454 So.2d 964 (Ala.1984); Gigandet v. Third National Bank of Nashville, Tenn., 333 So.2d 557 (Ala.1976). There appears to be a split of opinion, nationwide, as to whether the right to cure also exists under § 7-2-608(1)(b). 4 R. Anderson, Uniform Commercial Code § 2-608: 14 & 15 (3d ed. 1983). Since the overall policy of the Uniform Commercial Code is to allow transactions to take place and, generally, to allow the seller to cure defects causing rejection, it is my opinion that we need to give this issue more consideration.