This is an appeal by the plaintiff from a partial summary judgment entered in favor of the defendants. We affirm.
Plaintiff bought a new Ford station wagon from Jim Skinner Ford on August 20, 1976. The station wagon vibrated badly and, although both Jim Skinner and Ford Motor Company attempted over a period of months to correct the problem, it was never satisfactorily repaired.
Plaintiff filed suit against Jim Skinner and Ford on June 15, 1977. His complaint, as last amended, is as follows:
"COUNT ONE
 "Plaintiff claims of the defendants the sum of Nine Thousand, Two Hundred Thirty-Five and 96/100 ($9,235.96) Dollars for money on, to-wit, August 20, 1976, received by the defendant to the use of the plaintiff, which sum of money, with interest thereon, is still unpaid.
"COUNT TWO
 "Plaintiff claims of the defendants the sum of Fifty Thousand Dollars ($50,000.00), as damages, for that on, to-wit, August 20, 1976, an agent, servant or employee of the defendants while acting within the line and scope of his employment, for the purpose of inducing plaintiff to purchase a certain 1976 Ford Station Wagon, did represent to plaintiff that said Ford automobile, its motor, parts and accessories were mechanically in good working order and condition, and the plaintiff in reliance upon said representation and believing the same to be true, but which was untrue, purchased said Ford automobile for the sum of $9,235.96. And plaintiff further avers that said representation was false, and was then known to be false by said agent, servant or employee of defendant, or ought to have been known by said agent, servant and employee of defendants, acting within the line and scope of his employment as such, to have been false, and that as a proximate result thereof plaintiff was damaged as aforesaid.
"COUNT THREE
 "Plaintiff claims of the defendants the sum of Fifty Thousand Dollars ($50,000.00), as damages, for that on, to-wit, August 20, 1976, an agent, servant or employee of the defendants while acting within the line and scope of his employment, for the purpose of inducing plaintiff to purchase a certain 1976 Ford Station Wagon automobile, did represent to plaintiff that said Ford automobile was free from defects in material and workmanship and that defendants would make good, without charge, any defective part or parts of said Ford automobile which should occur within 12 months of the delivery of said automobile to plaintiff or before said Ford automobile had been driven 12,000 miles, which ever should first occur, and the plaintiff in reliance upon said representation and believing the same to be true, but which was untrue, purchased said Ford automobile for the sum of $9,235.96. And Plaintiff further avers that said representation was false, and was then known to be false by said agent, servant or employee of defendants, or ought to have been known by said agent, servant or employee of defendants, acting within the line and scope of his employment as such, to have been false, and that as a proximate result thereof plaintiff was damaged as aforesaid." (Emphasis Supplied)
The defendants took the plaintiff's deposition and filed motion for summary judgment on COUNTS TWO and THREE supported *Page 115 
by the plaintiff's deposition. By deposition, the plaintiff testified that employees of Jim Skinner told him the car had been checked out and everything was okay, "that it was in perfect operating condition and everything."
He further testified as follows:
 "Q All right. Specifically on that occasion, tell me again what you recall being said to you by either this Howard fellow, or, the young salesman regarding the car, not the price, but, regarding the car itself, to the best of your recollection everything that was said.
"A What they said to me?
"Q Yes, sir.
 "A They just said it was, the car was loaded, it had everything on it, everything on it that you could put on one, and there wasn't nothing else that you could put on it, that that was the only station wagon in town like that.
"Q You mean it was fully equipped?
"A Right.
". . .
"Q All right. What else do you recall them saying?
 "A At the moment I can't think of anything. There was a lot said, but, I can't remember at the present time.
 "Q Well, what was said as you recall that was important to you, that made some impression on you, or something that you do recall?
 "A They didn't say anything to the car. The looks on it, and what was on it impressed me. They didn't have to say anything.
 "Q And you had decided to buy the car not based on what they told you, but by looking at the car, knowing what it had on it, and the price they gave you? Are those the things that convinced you to buy the car?
"A Yes, sir.
". . .
 "Q And you bought the car then based on what you saw that the car had and the price that they quoted you?
"A Yes, sir."
Skinner and Ford contend that the trial court properly granted summary judgment in their favor because Mathis' deposition affirmatively shows that no genuine issue of material fact exists in support of the claims asserted in COUNTS TWO and THREE. These counts state a claim for punitive damages based upon fraud. To prove liability on this theory, the plaintiff must show: (1) A false representation; (2) concerning a material existing fact; (3) that was relied upon by the plaintiff as an inducement to act or not to act; and (4) that the plaintiff was damaged as a proximate result.International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977); Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971).
Assuming that the representations made by Skinner's employees to Mathis were false, by deposition, he affirmatively asserted that he did not rely upon them as an inducement to purchase the automobile. He offered no evidence that any representation (other than the warranty accompanying the automobile) was made by Ford. He did not offer any evidence to support a claim that Ford had no intention to honor the warranty. In fact, his statements showed that Ford did honor the warranty.
Purchasers have a right to assume that new automobiles will perform in accordance with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation.
However, no claim based upon this theory was before the trial court when it granted partial summary judgment in favor of Skinner and Ford, the plaintiff having asserted, in addition to the intentional fraud claims, only a claim for money had and received. *Page 116 
The plaintiff offered no evidence by way of affidavit or otherwise in opposition to the motion for summary judgment, which the defendants supported by deposition. On motion for rehearing, he did offer an affidavit in which he contradicted statements made by him in deposition. He offered no explanation of his failure to offer evidence in response to the defendants' motion and, at that stage, simply relied on his pleading. The propriety of granting motions for summary judgment must be tested by reviewing what the trial court had before it when it granted the motion. Here it had only the pleadings and the deposition of the plaintiff which established the absence of an issue of fact as to the claims asserted. It was, therefore, incumbent upon the plaintiff, on rehearing, to show circumstances which prevented his presenting evidence to counter that offered in support of the motion for summary judgment. Absent that, the trial court did not abuse its discretion in refusing to set aside the summary judgment.Willis v. L.W. Foster Sportswear Co., Inc., 352 So.2d 922
(Fla.App. 1977); Rule 56 (e), ARCP.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.