374 So.2d 857 (1979)
BOULEVARD CHRYSLER-PLYMOUTH, INC., and the Chrysler Corporation, a corp., jointly and severally
v.
Dorothy Louise RICHARDSON, as Personal Representative of the Estate of James Theodore Richardson, Deceased.
77-743.
Supreme Court of Alabama.
August 3, 1979.
Rehearing Denied September 7, 1979.
*858 James D. Brooks and Carl Robert Gottlieb, Jr., Mobile, for appellants.
James A. Yance for Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellee.
JONES, Justice.
Plaintiff, James T. Richardson,[1] filed an action against Boulevard Chrysler-Plymouth and the Chrysler Corporation for fraud in the selling of an automobile. After a trial on the merits, the jury returned a verdict against both Defendants in the amount of $30,000. Appellants' motion for new trial was denied; and this appeal followed. We affirm.
When Boulevard Chrysler began business on February 1, 1974, and at all times pertinent to this case, it was owned by a division of the Chrysler Motor Corporation.[2] On August 27, 1974, Richardson purchased from Boulevard a 1974 metallic blue Chrysler New Yorker which had been originally delivered to Beltline Chrysler-Plymouth on November 8, 1973. When Beltline went out of business, Boulevard took possession of 91 units, including this vehicle. At the time the car was first received by Beltline, repair work for transportation damage was necessary, consisting of straightening and painting the right front door. Boulevard's records show the following "warranty work" was done on this vehicle: "Removed and replaced hood; refinished under hood; correct rust, underside; removed and refinished right, left fender panel; refinished all four door jambs." The records further reflected there was rust on the inner panel, firewall and hood hinges, and all were refinished. Additionally, the records indicated the left rear quarter panel and the underside of the deck lid were refinished.
Approximately three months later, certain dents and "wrinkles" were straightened in the lower body. Appellants state that these were "production dents." At this time the lower portion of the car was completely refinished (the mileage on the car at this time was 70 miles as opposed to 20 miles when Boulevard first received the vehicle).
Prior to the purchase by Richardson, yet other "warranty work" was performed on the car, including the following: sanding the brake lining, and correcting brake noise; lubricating the backing plate; straightening the freeze plugs; correcting the decorative lining of the quarter panel wheelhousing molding inside the trunk; correcting a wiring short to a power window; correcting a faulty defroster motor; fitting bolts in the motor housing; tightening quarter panel molding; correcting trim panel and re-aligning the carpet at the left front door. In all, Boulevard's records show that the vehicle had $402.80 of body paint work; $108.10 of mechanical work; and $43.50 of trim work. A Chrysler representative, Robert Mitchel, was informed of and gave approval to all the repair work.
*859 When Richardson purchased the car, he told the salesman that he wanted "a new car," and he paid $5,786.13 for this particular automobile. Appellants contend that this "unusually low price" reflects the fact that the car was part of a bankruptcy-inventory purchase; and, therefore, it sold at a substantial (20% off list) discount. Appellants' own employee who sold the car to Richardson, however, states that any new, comparably-equipped New Yorker on the lot could have been purchased for this price.
About two months after Richardson's purchase, while Richardson's wife was shopping, a shopping cart scraped paint off the door of the car. The car was taken to an automobile mechanic, Jesse Holmes, who checked the car and informed Richardson that the car had been completely repainted. Holmes found that the left front fender had been split and welded and filled with body filler, and that dents had been removed and filled with body filler on the rear door post. He found bolts were missing from the front radiator core support and testified that, in his opinion, the car had suffered an impact from the front. Holmes stated:
"... the car hit something or something hit the car from the front ... pushing it back. To where even the right front door, the fender had been pushed into the right front door."
Appellants raise various issues concerning Richardson's right to recover for fraud. Basically, Appellants contend that the Plaintiff has failed to prove the material elements necessary to recovery on a claim of fraud. Furthermore, Appellants challenge the right of Plaintiff to recover punitive damages in this case. Appellants' arguments are based on the contention that the car sold to Richardson was, in fact, "new" as represented, there being no prior retail purchase of the vehicle. We find no merit to Appellants' contentions.
Appellants earnestly insist that we adopt a legal definition of the term "new car." They contend that "new car" should be legally defined as a motor vehicle for which there has been no prior retail purchaser and which has not suffered a substantial collision with another vehicle or object. According to this definition, insist the Appellants, this was a "new" car, because the only repairs performed on the car prior to its sale to Richardson were to correct minor defects and flaws in appearance normally expected to result from age, exposure to weather, and transportation. Appellants point to the dealer's designation, and the manufacturer's acceptance, of these repairs as "warranty work" in furtherance of their contention that they fall within the broad embrace of their proposed definition.
Not only do we decline to adopt Appellants' proposed definition of "new car," we feel that a legal definition is ordinarily unnecessary to the orderly disposition of these cases. Admittedly, extreme facts can be posed at either end of the issue, where, in one case, the car is undisputedly a new car (e. g., minor adjustment or repair which does not alter the car's condition from that normally and reasonably expected by a "new" car purchaser); while, at the other extreme, the car is obviously not "new" (e. g., a previous owner or major alterations and repairs resulting from the wreck of the vehicle).
We are not saying that in certain extreme circumstances the courts should not apply an objective legal test as determinative of the "new car" issue, though we think the occasion for such application would be exceedingly rare. Ordinarily, the issue will be a factual one. Such is the case here. From the evidence, the jury was justified in concluding, "in accordance with reasonable expectations" standards, that this car was not new.
In Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113, 115 (Ala.1978), it is stated:
"... To prove liability on this theory, the plaintiff must show; (1) A false representation; (2) concerning a material existing fact; (3) that was relied upon by the plaintiff as an inducement to act or not to act; and (4) that the plaintiff was damaged as a proximate result [Cited cases omitted].
"Purchasers have a right to assume that new automobiles will perform in accordance *860 with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation."
Here, Richardson informed Boulevard's salesman that he desired to purchase a "new" automobile, not a used or beat-up or damaged one. Boulevard's salesman informed Richardson that he had a car "like you want," and later a sale was consummated on this particular vehicle. In fact, it is undisputed by dealer that the vehicle had required extensive repair work, including repainting. Furthermore, there is credible evidence from which the jury could conclude this particular vehicle had been involved in a front-end collision.
In Hall Motor Company v. Furman, 285 Ala. 499, 234 So.2d 37 (1970), the plaintiff purchased as new an automobile which had been extensively damaged in the manufacturing process. There was no evidence to show that the dealer was aware of the damage when it sold the car to plaintiff.
The Court in Hall upheld a verdict against the dealer to the extent of actual damages under Tit. 7, § 108, Code 1940 (Code 1975, § 6-5-101), which imposes liability for innocent misrepresentations when acted upon by the opposite party to his detriment. It was no consolation to the defendant in that case that the car had never been sold to a retail purchaser prior to the sale to plaintiff. The car as sold, in that case, was not equal in value to a new, undamaged vehicle. Likewise, Appellants in the present case cannot find solace in the fact that the vehicle had never been titled or licensed.
Like the plaintiff in Hall, Richardson desired to purchase a "new" automobile and informed the dealer of his intent. Plaintiff in Hall and Richardson were both sold automobiles that, although never sold before at retail, were of considerably less value than other comparably-equipped new cars. Appellants concede that the car was represented to Richardson as new, but the jury could find from the evidence that this constituted a deception in that the car had suffered extensive damage, requiring body work and total repainting of the automobile. Furthermore, the evidence supports a finding that the misrepresentation was of a material fact, that there was an attempt to deceive Richardson, or any other prospective purchaser of this vehicle, and that Richardson was deceived and relied to his detriment upon the misrepresentations. The evidence supports a finding that Richardson suffered actual damages (the difference between the value of other comparably-equipped Chrysler New Yorkers and his damaged, but repaired, Chrysler New Yorker).
In Hall, punitive damages were not allowed because the evidence showed that defendant had no knowledge that the car had been manufactured in a faulty manner. Hall does, however, clearly establish the right of the plaintiff to punitive damages when the fraud is malicious, oppressive, or gross, and the misrepresentation is made with knowledge of its falsity and with the purpose of injuring him. We find the evidence in this case supports the jury's verdict awarding punitive damages.
AFFIRMED.
BLOODWORTH, MADDOX, FAULKNER, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., dissents.
TORBERT, Chief Justice (dissenting):
I respectfully dissent.
Although I agree an objective, litmus paper approach to the definition of "new" car is not proper, I do believe it necessary to examine what defendants thought was a "new" car. Punitive damages are not proper in a fraud case unless the misrepresentation *861 is not only intentional, but also gross, malicious, and oppressive. Proctor Agency, Inc. v. Anderson, 358 So.2d 164 (Ala.1978). Punitive damages are not recoverable for an innocent misrepresentation. Winn Dixie Montgomery, Inc. v. Henderson, 353 So.2d 1380 (Ala.1978). If appellants actually believed they were selling a "new" car, at most the misrepresentation was innocent and punitive damages are inappropriate.
The record is replete with uncontradicted testimony directly supporting appellant's contention that, at least from their perspective, the car was "new". Appellee's own witness, an expert in the field, testified the car was "new" at the time of purchase. Other witnesses testified the car was "new" as the term is used in the automobile industry. The car had no previous owner and had only been driven seventy miles when sold to appellee. Although repairs were made to the automobile, the custom and practice of the industry in 1974 was to not disclose ordinary predelivery repairs to "new" cars. Appellee's expert witness testified the repairs made to the car were more extensive than usual, but they were not extraordinary.
From the unrefuted evidence, the jury could only conclude appellant did not intend to deceive appellee when appellant's salesman sold as "new" a car having repairs and new paint. I recognize it is within the province of the jury to find intentional conduct in cases of fraud, and I am reluctant to usurp the function of the jury. A jury, however, has no untrammeled discretion to speculate on the existence of fraudulent intent. Universal Brokers, Inc. v. Higdon, 56 Ala.App. 184, 320 So.2d 690 (1975). Any finding on the issue must be based on reasonable inferences from the evidence, and intent to defraud must be clearly proved by a preponderance of the evidence. Id. Even when viewed in light most favorable to appellee, the evidence does not support a jury finding of fraudulent intent. I would affirm the compensatory award and reverse on the issue of punitive damages.
NOTES
[1] A substitution of parties followed the death of the Plaintiff, who died after final judgment and during the pendency of this appeal.
[2] Although Appellants devote a substantial portion of their brief to the proposition that a manufacturer should not be held liable for the misrepresentation of its dealer, this issue was expressly waived by Appellants' counsel during oral argument of this case on appeal. The same counsel represented both Defendants at trial and on appeal.