494 So.2d 416 (1986)
FORD MOTOR COMPANY
v.
June BURKETT.
84-636.
Supreme Court of Alabama.
July 25, 1986.
James T. Upchurch III, of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellant.
Frank J. Tipler, Jr., of Tipler & Tipler, Andalusia, for appellee.
JONES, Justice.
This is a breach of warranty and fraud case arising out of the sale of a new automobile. Because of our reversal and remand for a new trial, a brief overview of the evidence most favorable to the verdict will suffice.
Plaintiff, a young adult, bought a new Ford automobile, valued at about $10,000, which used an excessive amount of motor oil. Upon receiving a complaint from the buyer, Ford and its dealer made repeated and extensive attempts to cure the defect over a period of approximately one year. When all efforts, short of replacing the engine or the car, failed, the manufacturer and the dealer treated the buyer with indifference and ceased to make further efforts on her behalf, except that the dealer continued to supply and add the necessary oil to the car on a weekly basis until she hired a lawyer. For the first several months following the buyer's initial complaints, the manufacturer made several statements to the effect that it would remedy the defective condition of the car and that it would "make [her] happy." Not having accomplished the former, it failed in the latter. Although there was a slight improvement after a "shade tree" mechanic discovered *417 and repaired an oil leak, Plaintiff's car continued to use an excessive amount of oil.
Against a motion for directed verdict by both Defendants, the case was submitted to the jury on breach of warranty and fraud claims. The jury returned a general verdict for $30,000 against Ford only, which verdict necessarily included an award of punitive damages.
Our review of the totality of the circumstances convinces us that the trial court did not err in denying Ford Motor Company's motion for directed verdict on the fraud claim. The facts of the case, however, do not evince either the requisite elements of intent to injure or malice to warrant the imposition of punitive damages; thus, the trial court erred in submitting the fraud claim to the jury with the instruction that it was authorized to include in its verdict an award of punitive damages. See Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala.1982). Accordingly, the trial court should have granted Ford's motion for a new trial on the ground that the jury verdict included an award of punitive damages.
As Burroughs illustrates, not every tort of legal misrepresentation (Code 1975, § 6-5-101) carries with it the authority to impose punitive damages. One who, with intent to injure, misrepresents a material fact, relied upon by another to his detriment, commits a redressable tort (§ 6-5-103); and the authority to impose punitive damages lies within the factfinder's discretion. Ex parte Smith, 412 So.2d 1222 (Ala. 1982); Loch Ridge Construction Co. v. Barra, 291 Ala. 312, 280 So.2d 745 (1973). On the other hand, a misrepresentation of a material fact, not accompanied by either malice, reckless disregard for the truth, or intent to injure (i.e., one made without knowledge of its falsity), while constituting a legal fraud and authorizing compensatory tort damages, will not authorize the imposition of punitive damages. Hopkins v. Lawyers Title Insurance Corp., et al. [Ms. 84-293, May 30, 1986] (Ala.1986).
That implied representations, which, if false, support a tort claim, may arise out of the mere sale of a new product is recognized in Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113 (Ala.1978):
"Purchasers have a right to assume that new automobiles will perform in accordance with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation."
We are not prepared to say that the evidence is devoid of support for a reasonable inference that Ford committed the tort of legal misrepresentation. The jury, in the exercise of its factfinding prerogative, is not restricted to a consideration of only the bare words spoken by the parties. It had before it the relationship of the parties, the nature of the transaction, the conversations, and the subsequent conduct of the manufacturer and the seller. From the totality of these circumstances, the jury could have reasonably found the following: That this purchaser realized almost immediately after buying a "brand new" car that it did not perform according to reasonable expectations; that upon returning the car to the seller and calling the manufacturer, she was assured by each of them that a replacement of her car would not be necessary; that the trouble was minor and readily repairable; that Ford Motor Company makes "excellent" automobiles; that this was an excellent automobile; and that they could and would repair it and "make [her] happy."
The jury was free to conclude that, after repeated repair attempts (during which time she was without the use of her car), the defective condition of her car remained *418 essentially unchanged; that, after these initial unsuccessful efforts to repair, Ford "washed its hands" of the matter and made its customer most unhappy; that under these circumstances, the implied representations inherent in selling the car included the buyer's right to expect her new car not to use excessive oil; and that only the manufacturer and not the seller could have remedied the situation by replacing the defective vehicle.
These reasonable inferences of fact authorize a factual conclusion that Ford, in its implied representations of "new car" quality and fitness, along with its representation that the defect could and would be repaired to her satisfaction, misrepresented a material fact, which was relied upon by the buyer to her detriment. This finding, in turn, authorizes an award of compensatory damages, including loss of time and mental anguish proximately resulting from the wrong.
By the same token, however, we are unable to say that the reasonable inferences from the evidence support a finding that this tort was committed with malice or with reckless disregard for the truth, or with the intent to injure. The evidence does not lend itself to a reasonable inference that Ford, at the time of the sale, knew of the defect, or at the time of its subsequent representations regarding repair, intended not to repair the car, or knew that the excessive oil defect was unrepairable.
We recognize the fine line that often separates those misrepresentation cases that authorize merely compensatory damages from those that authorize punitive damages. Although, in practical application of the appropriate test that line is not always easy to draw as a matter of law, we hold here, just as we did in Burroughs and Hopkins, that this case falls within that category of cases authorizing a finding of legal misrepresentation, but not authorizing an award of punitive damages. Therefore, we reverse the judgment and remand the case for a new trial.
REVERSED AND REMANDED.
All the Justices concur except TORBERT, C.J., who concurs in the result.
TORBERT, Chief Justice (concurring in the result).
Although plaintiff has established a cause of action for breach of warranty, I find no evidence that supports a claim of fraud. Appellant's failure to make a post-judgment motion for judgment not withstanding the verdict (JNOV) precludes this Court from reversing for the trial court's failure to grant a directed verdict on the fraud claim. Black v. Black, 469 So.2d 1288 (Ala.1985). However, my conclusion that there is no evidence of actionable fraud necessarily means that a verdict for the appellee on the fraud claim must have been against the great weight of the evidence.[1] Therefore, it was error not to grant a new trial.
Appellee contends that actionable misrepresentations took place when a salesman made general representations during negotiations prior to the sale that the car was "good," and after she returned the car to have repair work done, when she was told that the car would be fixed and that she would be satisfied.
Neither of these statements is an actionable misrepresentation. We have previously held that statements that houses are in "excellent" condition were statements of opinion and not actionable misrepresentations. Cooper & Co. v. Bryant, 440 So.2d 1016 (Ala.1983); Harrell v. Dodson, 398 So.2d 272 (Ala.1981). The statements that the car was "good" are analogous to the statements that the houses were "excellent" and are therefore not actionable.
*419 The promises to fix the car and satisfy the appellee are not actionable fraud in the absence of evidence showing a present intent not to perform at the time the statements were made. Purcell Co. v. Spriggs Enter., Inc., 431 So.2d 515 (Ala.1983). There is no such evidence present in this case. In fact, the evidence shows that repeated attempts were made to solve the problem, including, on one occasion, a ring job, and, on another occasion, an engine examination where the engine was completely torn down. While it may be true that the problem was not in fact completely corrected, that alone does not amount to evidence that there was no intent to perform when the promise to repair was made. Otherwise, a breach of contract would be tantamount to fraud. Id. at 519.
Further, I do not find any fraud in the implied representations that the majority contends were made. In essence, the majority concludes that if a new product is sold and there is a problem with it and the manufacturer has trouble repairing it, there is a possible cause of action for legal fraud. While Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113 (Ala.1978), does say that it is possible to have a fraud action under certain circumstances with regard to the sale of a new car, no such liability was found to exist in Mathis and I find no other case where a fraud action has been found viable under circumstances similar to those in this case.
The circumstances the majority claims give rise to an action for fraud have classically been found to give rise to a breach of warranty action. Mathis, supra. The majority would find that while each of the circumstances considered individually does not amount to actionable fraud, when they are considered together fraud exists.
In the only case I have found that applied the Mathis holding, Boulevard Chrysler-Plymouth v. Richardson, 374 So.2d 857 (Ala.1979), there is a material factual difference between the facts presented there and the facts of this case. In Richardson, the new car had been altered between the time it left the factory and the time it reached the consumer. The consumer was told it was a new car, and while it had never before been sold, it apparently had been in a front-end collision and had been extensively repaired. Under those facts, I agreed that the jury could conclude that the consumer did not get a "new" car. In this case the appellee received the car in exactly the same condition as it left the factory. While it may have been defective, and the appellee is certainly entitled to pursue a breach of warranty action for the failure to cure the defect, I fail to see how this amounts to fraud.
Because there is no evidence of an actionable fraud, the motion for new trial should have been granted. I agree that we must reverse and remand the cause for a new trial, but for a reason very different from that given by the majority.
NOTES
[1] Appellant did make a motion for new trial, contending that the verdict was against the great weight of the evidence. The jury returned a general verdict in favor of the plaintiff for $30,000. It is clear however, from the posture of the case that the jury must have found for the plaintiff on both the breach of warranty and fraud claims. The evidence shows that the plaintiff suffered less than $10,000 in compensatory damages. Therefore, the other $20,000 must be an award of punitive damages in connection with the fraud claim.