558 So.2d 888 (1989)
Terry COUCH
v.
WOODY ANDERSON FORD, INC., and Ford Motor Company, Inc.
88-1392.
Supreme Court of Alabama.
December 15, 1989.
Rehearing Denied February 9, 1990.
*889 G. John Dezenberg, Jr. of Higgs & Conchin, Huntsville, for appellant.
Stuart M. Maples of Bradley, Arant, Rose & White, Huntsville, and Gary L. Hayden, Gen. Counsel, Dearborn, Mich., for appellee Ford Motor Co., Inc.
Michael L. Fees of Watson, Gammons & Fees, Huntsville, for appellee Woody Anderson Ford, Inc.
STEAGALL, Justice.
Plaintiff, Terry Couch, appeals the summary judgment in favor of Woody Anderson Ford, Inc., Ford Motor Company, Inc., and certain fictitiously named defendants, in an action alleging fraud, misrepresentation, and suppression of material facts concerning a truck purchased by Couch from Woody Anderson Ford on August 5, 1988. We affirm.
In the process of purchasing the vehicle from Woody Anderson Ford, Couch signed several documents, including a "buyer's order"; that buyer's order contained the following acknowledgement and disclaimer:
"THE PURCHASER HEREIN ACKNOWLEDGES THAT THIS VEHICLE MAY HAVE HAD MECHANICAL AND/OR BODY REPAIRS. SAID VEHICLE MAY HAVE SUFFERED DAMAGE DURING PRODUCTION, TRANSIT, WHILE IN THE POSSESSION OF A PRIOR OWNER OR IN THE POSSESSION OF THE SELLER. THE SELLER MAKES NO REPRESENTATIONS AS TO FORMER DAMAGE, IF ANY, NOR WARRANTIES AS TO THE REPAIR OF SAME."
The above-quoted material was set out in bold lettering from the rest of the document and the document was signed by Couch directly beneath this language. Couch also signed a clause contained in that document that stated he had read, understood, and accepted the provisions of the buyer's order.
Three months after purchasing the truck, Couch decided to trade it in. It was at this time that he learned the passenger-side door appeared to have been repainted.
On November 15, 1988, Couch sued Woody Anderson Ford and Ford Motor Company, alleging fraud, misrepresentation, and suppression of material facts. After Couch was deposed by the defendants, Woody Anderson Ford and Ford Motor Company moved for summary judgment, asserting that no genuine issue of material fact remained and that Couch was unable to show either a misrepresentation by the defendants or reliance by him on a misrepresentation.
In response to the defendants' motion for summary judgment, Couch filed an affidavit stating that he had specifically inquired as to whether the truck had been damaged or repaired and that a salesman/representative of Woody Anderson Ford had told him that it had not. Couch also stated in his affidavit that he did not read the disclaimer and was rushed into signing the buyer's order.
The trial court, in its order entering summary judgment, found that "the affidavit of Terry Couch is in direct contradiction with certain testimony given at the deposition of Mr. Couch, and, thereby, cannot be considered by this Court to establish [a] genuine issue of material fact on those contradictory issues." The trial court then found that there was no substantial evidence to support the finding of a genuine issue of material fact and that the defendants were entitled to a judgment as a matter of law.
On appeal, Couch argues that the inclusion of the aforementioned disclaimer does not preclude an action for fraud, misrepresentation, and suppression of material facts.
We note that this action was commenced after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence rule." See Ala.Code 1975, § 12-21-12.
This Court has recently stated:
"`When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, *890 without explanation, previously given clear testimony.'
"[A party] cannot be allowed to create an issue of fact by providing an affidavit that contradicts, without explanation, his prior deposition testimony."

Robinson v. Hank Roberts, Inc., 514 So.2d 958, 961 (Ala.1987) (citations omitted).
Couch gave the following testimony during his deposition:
"Q All right. Tell me about what conversation you had with Mr. Case, what he told you, what you told him, and what your wife told him.
"A This time we went down there, and I asked to speak to Burt Franklin, and he said Burt wasn't there on that day. So, I said, `Well, I see the truck is back out here. You know we come down to look at it before.' And he said, `Yeah.' And I said, `I would like to see about getting it.' I said, `I brought my other car down here.' And it was an '84 Toyota Celica that we had brought down there to trade in. And he said, `Well, have you drove the truck before?' And I told him yes, I had drove it. And he said, `Well, if you would like to drive it again' and I said, `Well, I have already drove the truck, and it hasn't been that long ago and can't much go wrong with a truck.' And he said okay, and we come in and we looked at it, and me and my wife decided if we really wanted it or not
"Q You all looked at the truck again?
"A We looked at the truck again.
"Q How long did you look at the truck, approximately?
"A We were, you know, looking at the interior and whatever, to make sure that we liked it, and we sat in it, to be sure we wanted it.
"Q Did you walk around the exterior and look at it?
"A Yes, we looked around it.
"Q Was Mr. Case out there with you when you were looking at the truck?
"A Yes, sir.
"Q Do you recall anything he told you at that time?
"A I asked him why was the truck not on the lot when we come back to look at it. I said, `We come back here and the truck was gone,' and he said, `I don't know. I will go find out.' So, he went back into the office, and he come back out and he said that the truck had been sold to somebody but their loan didn't go through, and they had it around back.
"Q Did he tell you where the truck was
"A He said it was around back, back behind the building.
"....
"Q ... Did you have any other discussions with Roy Case about this vehicle at that time?
"A Not that I recall.
"Q Did your wife?
"A No.
"Q Was your wife always with you when you were talking to Mr. Case?
"A No, sir. I had to go get my car and bring it to the lot, because when we first went there, we were at the used car lot, and I had to bring it down for them.
"Q Have you had discussions with her about any other conversations that she had with Mr. Case?
"A Only that they were talking about school. He has a daughter or somebody that is kin to him that went to the same school, and they knew each other, and that's what they were talking about.
"....
"Q Did you have any discussions with the gentleman that handled the financing, the papers, that you can recall?
"A Not other than him explaining the papers that we were signing.
"Q Did he go over the papers fairly thoroughly with you?
"A Yes, sir.
"Q Can you tell me basically what he told you about the papers?
"A He just said, `You are signing this for the loan.' `This is how much you are financing.' `This is signing your car over to us.'
"Q He explained to you generally what you were signing?
*891 "A Right.
"Q Do you recall any other discussions that you had with him?
"A No, sir.
"....
"Q What statements were made to you that the vehicle was of a new quality; do you know?
"A I don't recall no statements specifically.
"....
"Q Do you have any evidence that Ford Motor Company did anything with intent to deceive you?
"A I have no evidence of anything like that.
"....
"Q In your discussions with anyone at Woody Anderson Ford, no one evidenced anyor you didn't pick up any sense that someone was trying to dupe you, did you?
"A No."
In Couch's affidavit, filed in response to Woody Anderson Ford and Ford Motor Company's motion for summary judgment, he stated:
"I specifically asked Mr. Case if the truck had ever been damaged or repaired in any way whatsoever. Mr. Case responded that he did not know but that he would check with the office. Upon returning he stated that the car had had absolutely nothing done to it and that it had not been damaged nor had any repairs. He stated that `if the car had any work done on it or been damaged that they (Woody Anderson Ford) would have to show to you the paperwork on it.' "....
"... The paperwork [buyer's order] was not explained to me and I was given less than ten minutes to sign the papers.
"The `Buyer's Order' ... was not explained to me and the [disclaimer] on the buyer's order ... was not explained to me nor read to me. I was told merely to `sign here.' I certainly did not understand that the vehicle was such that it may have been damaged prior to being sold to me. Had I known that the vehicle had been damaged or repaired I would not have purchased it. I told Mr. Roy Case, the salesman at Woody Anderson Ford, that and he assured me the vehicle had not been damaged nor repaired."
We agree with the trial court that the statements in Couch's affidavit are totally inconsistent with Couch's deposition testimony regarding any alleged misrepresentations that are the basis of his claim. The trial court did not err in so holding.
This case is similar to Planchard v. Dobbs Mobile Bay, Inc., 529 So.2d 942 (Ala. 1988), in which purchasers of an automobile alleged that the automobile was not "new," as the dealership said it was. In that case, we stated:
"For their case to withstand [a motion for] summary judgment, there must necessarily be a scintilla of evidence [now substantial evidence] of damage, not mechanical difficulties, other than the type `suffered ... during production, transit, or while in the control and the possession of the seller.' They have shown none."
Planchard, 529 So.2d at 943.
That case involved a buyer's order that contained a disclaimer almost identical to that in the case now before us. Likewise, here, as in Planchard, there has been no showing of any damage other than damage of a kind referred to in the buyer's order disclaimer. The summary judgment in favor of Woody Anderson Ford and Ford Motor Company is, therefore, due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and HOUSTON, JJ., concur.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., dissent.
HORNSBY, Chief Justice (dissenting).
The majority places much emphasis on Planchard v. Dobbs Mobile Bay, Inc., 529 So.2d 942 (Ala. 1988). Because I disagree with the use of Planchard to defeat the plaintiff's claim in this case, I must dissent. The Planchard rationale gives automobile *892 dealers an incentive to misrepresent, withhold, or suppress material information that should be disclosed to the buyer, while protecting themselves so long as they insert the proper language into their "buyer's order" form. Such a rationale is neither wise nor equitable where the buyer seeks to purchase a "new" vehicle; it is tantamount to imposing the doctrine of caveat emptor on the sale of new automobiles.
This Court has noted that the trend in the law is toward protection of the consumer and away from the old "buyer beware" standard. See, e.g., Neil Huffman Volkswagen Corp. v. Ridolphi, 378 So.2d 700 (Ala. 1979) (involving the sale of a used vehicle; buyer does not expect to drive a car that rolls sideways or becomes "nude" when washed). The decision laid down by the majority today can hardly be considered protective of the consumer. On the contrary, the present decision would allow a dealer to knowingly sell a damaged car, yet point to the disclaimer in its "buyer's order" form and avoid any liability where there is conflicting evidence of misrepresentation or suppression of material facts.
The majority cites Planchard for the proposition that the plaintiff must produce at least a scintilla of evidence of "damage, not mechanical difficulties, other than the type suffered ... during production, transit, or while in the control and the possession of the seller." Planchard, 529 So.2d at 943. I believe that there is evidence in this record to warrant submitting this case to a jury. There is the testimony of an appraiser who examined the truck purchased by the plaintiff, in which he stated that the door to this truck had been damaged and that, as a result thereof, the truck had depreciated by more than $4000. None of this damage or repair work was disclosed to the plaintiff before he bought the truck. It follows that a jury could reasonably find "damage" sufficient to support the plaintiff's claim. There was also evidence to indicate that the truck had been sold before but that the first buyer's financing "did not go through." Still, the truck was sold to the plaintiff as a "new" vehicle, and the plaintiff believed he was purchasing a "new" vehicle. I believe that this constitutes substantial evidence of fraud on the part of the seller in this case.
While there may be scant evidence of an express representation in the record, ignoring the contradictory affidavit filed by the plaintiff at summary judgment, the dealer in this case may well have made implied representations as to the vehicle's condition. This Court has recognized in the past that implied representations may support an action for misrepresentation. See Boulevard Chrysler-Plymouth v. Richardson, 374 So.2d 857 (Ala.1979). In the case of Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113 (Ala.1978), we stated:
"Purchasers have a right to assume that new automobiles will perform [and be in a mechanical and physical condition] in accordance with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation."
Id. at 115.
In keeping with this standard, sellers of new automobiles should be required before sale to make full, complete, and accurate disclosure to purchasers of all substantial damage known to exist in a vehicle. It can not reasonably be argued that such implied representations of condition are not necessary and integral parts of every automobile sales transaction; neither may it be argued that consumers do not justifiably rely on such representations when they are made. A written boilerplate disclosure such as the one at issue here can not fully apprise the buyer of the known defects in a vehicle. The disclosure given to the present plaintiff clearly did not make him aware that the door had had major repairs, and it clearly did not disclose to the buyer that *893 the vehicle was worth substantially less than a "new" vehicle. There was no full or accurate disclosure of the substantial damage in this case.
Based upon the foregoing, I must respectfully dissent.
JONES, SHORES and KENNEDY, JJ., concur.