[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 655 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 656 
The plaintiff, Thomas Jewell, appeals from a summary judgment entered in favor of Seaboard Industrial, Inc., which formerly did business under the name Sunshine Village Mobile Home Sales ("Sunshine Village"), a mobile home dealer; and from a partial summary judgment entered in favor of Southern Energy Homes, Inc. ("Southern Energy"), a mobile home manufacturer.
In October 1991, Jewell purchased from Sunshine Village a double-wide mobile home that had been manufactured by Southern Energy. While considering the purchase of a mobile home, Jewell had visited Sunshine Village's lot two or three times to look at its inventory of mobile homes.
On Jewell's first visit, he and his daughter met with Jimmy Hart, the manager at Sunshine Village. Jewell told Hart that he was interested in a double-wide mobile home. Jewell and his daughter walked through some of the double-wide mobile homes to see what they were like. Hart stated that he had a "new 1991 mobile home demo" that he was selling at a discount because the new models were coming in soon. This mobile home had a cardboard sign in the window that read "demo." The sale price of the home and the original price were listed on the cardboard sign. Jewell looked through the mobile home and then left Sunshine Village to visit other mobile home dealerships.
At some point thereafter, Jewell returned to Sunshine Village. He walked through the same mobile home and met again with Hart. Because the price was posted in the window of the home, they did not discuss the price. Hart indicated again that the home was a "new 1991 mobile home demo."
A few weeks later, Jewell returned again to Sunshine Village and met with Hart. Jewell told Hart that he was ready to purchase the mobile home, and they discussed the down payment and financing. During these discussions, Jewell brought to Hart's attention that there was a scratch on one of the bathtubs in the mobile home, that there were loose end caps on some of the counter tops, and that some molding was loose or broken. Hart informed Jewell about the one-year warranty provided by the manufacturer, Southern Energy. Hart told Jewell that after the mobile home was "set up," he could make a list of defects and that Hart would forward the list to Southern Energy for it to make the repairs in accordance with its warranty. Sunshine Village gave no warranty on the home.
Shortly after the home was set up, Jewell wrote, in his own handwriting, a list of 128 defects that he found in the home, and he took the list to Hart. An employee of Sunshine Village typed Jewell's list of defects and sent it by facsimile transmission to Southern Energy. It is apparent from the record that no repairs had been done as of early January 1992.
In January 1992, Jewell complained to the Better Business Bureau that Southern Energy had not repaired his mobile home. In February 1992, Jewell complained to the Alabama Manufactured Housing Commission that Southern Energy had not repaired his mobile home. A representative from the Alabama Manufactured Housing Commission inspected the mobile home and sent a copy of his findings to both Southern Energy and Sunshine Village. The report indicated that Sunshine Village's set-up of the mobile home had been properly performed. The report listed 54 defects in the mobile home, 53 of which the report indicated were the responsibility of Southern Energy. The remaining defect, a faulty furnace, was listed as the *Page 657 
responsibility of Sunshine Village. Sunshine Village made arrangements to have the furnace repaired and wrote Southern Energy, in Jewell's behalf, asking that repairs be done to the mobile home.
In April 1992, a service representative of Southern Energy was sent to Jewell's mobile home. The service representative performed repairs on the mobile home for two to three days, repairing the defects that Jewell had listed. After the repairs were made, Jewell reported to Hart that five items had not been repaired. Hart wrote Southern Energy, requesting that the remaining five repairs be made.
That same month, Jewell noticed that an absence of water drains on his front porch had caused water to leak into the home. Jewell notified Sunshine Village, which, again, notified Southern Energy of the problem. As of November 1992, the leak had not been repaired. Hart tried unsuccessfully to remedy the leaking problem. After the unsuccessful attempt, Jackie Compton, the president of Sunshine Village, wrote Southern Energy a second time, requesting that the leak be repaired. Thereafter, Southern Energy made some efforts to repair the mobile home; however, no repairs were actually made, either because Southern Energy could not get in touch with Jewell or because the parties could not agree on a time for the repairs.
On January 6, 1993, Jewell sued Southern Energy and Sunshine Village, alleging breach of contract, breach of warranty, negligent and wanton repair, and fraud. The trial court entered a partial summary judgment for Southern Energy on the fraud claims and made that partial summary judgment final pursuant to Rule 54(b) Ala.R.Civ.P.[1] It entered a summary judgment in favor of Sunshine Village on all counts. Jewell appeals.
A summary judgment is proper and must be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Gray v. Liberty Nat'l Life Ins. Co.,623 So.2d 1156 (Ala. 1993). We review a summary judgment by the "substantial evidence" rule. Under this rule, once the movant has made a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the nonmovant must rebut this showing by presenting "substantial evidence" creating a genuine issue of material fact. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870 (Ala. 1989);Henson v. Celtic Life Ins. Co., 621 So.2d 1268 (Ala. 1993); Ala. Code 1975, § 12-21-12(d). Also, reasonable doubts concerning the existence of a material fact must be resolved in favor of the nonmoving party. Henson; Hanners v. BalfourGuthrie, Inc., 564 So.2d 412 (Ala. 1990).
Because this case involves multiple claims against multiple defendants, we consider each defendant and the claims against it separately.
 Claims against Southern Energy
Jewell asks this court to reverse the partial summary judgment entered in favor of Southern Energy on his various fraud claims; those claims alleged suppression, misrepresentation, and deceit.
To establish a cause of action for fraudulent misrepresentation, the plaintiff must show 1) that the defendant made a misrepresentation; 2) that that misrepresentation concerned a material existing fact; 3) that the plaintiff relied on the misrepresentation; and 4) that the reliance was to the plaintiff's detriment. Ala. Code 1975, §6-5-101; Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602
(Ala. 1987). Under § 6-5-101, "legal fraud" includes misrepresentations of material fact made "by mistake or innocently," as well as misrepresentations made "willfully to deceive, or recklessly without knowledge." Young v. SerraVolkswagen, Inc., 579 So.2d 1337 (Ala. 1991). *Page 658 
In order to establish a cause of action for fraudulent suppression, the plaintiff must show 1) that the defendant had a duty to disclose material facts, 2) that the defendant concealed or failed to disclose those facts, 3) that the concealment or failure to disclose induced the plaintiff to act; and 4) that the defendant's action resulted in harm to the plaintiff. Interstate Truck Leasing, Inc. v. Bender,608 So.2d 716 (Ala. 1992). A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent. Dodd v. NeldaStephenson Chevrolet, Inc., 626 So.2d 1288 (Ala. 1993); Hardyv. Blue Cross Blue Shield of Alabama, 585 So.2d 29 (Ala. 1991); King v. National Foundation Life Ins. Co., 541 So.2d 502
(Ala. 1989); See, McGowan v. Chrysler Corp., 631 So.2d 842
(Ala. 1993); Ala. Code 1975, § 6-5-102.
A cause of action for deceit, under Ala. Code 1975 §§ 6-5-103
and -104, results from either a willful or a reckless misrepresentation or a suppression of material facts with an intent to mislead. Whitlow v. Bruno's, Inc., 567 So.2d 1235
(Ala. 1990).
Jewell's fraud claims are based mainly on the premise that the home was not "new," because, he claims, it did not meet his "reasonable expectations." Jewell claims that Southern Energy either misrepresented that the home was a "new" home, when it was not, or failed to disclose that the home was not "new." He also claims that Southern Energy acted fraudulently in failing to repair the home. Southern Energy, relying on Hart's statement that the mobile home was a "new 1991 mobile home demo," claims that Jewell's various claims for fraud should be barred because Jewell was sold a demonstrator model and any statement that the home was "new" was therefore not a representation of a material fact that could support a fraud claim. In the alternative, Southern Energy claims that the mobile home sold to Jewell was in fact "new," because there was no evidence that the mobile home had been sold, damaged, altered, or repaired before being sold to Jewell.
In Young v. Serra Volkswagen, Inc., 579 So.2d 1337 (Ala. 1991), this Court held that an automobile dealer's representation that a demonstrator vehicle "was as good as a new car" was mere puffery, which the plaintiff could not justifiably regard as a representation that the car was "new." The plaintiff in Young sued Serra, alleging fraud, after she purchased an automobile that was described to her as a "demo." The plaintiff argued that the salesman's statement that the car was a "demo" and "was as good as a new car" and the assurance that the car was under a new car warranty led her to believe that she was purchasing a new car. This Court held that Young could not have justifiably relied on a belief that the car she purchased was a new car, given that the "Retail Buyer's Order" signed by the plaintiff described the car as a "demonstrator," that the car had an odometer reading of 6,187 miles, and that the price of the car had been reduced because of that mileage.
Unlike the automobile in Serra, the mobile home that Jewell purchased was not a demonstrator or "demo." Jewell's mobile home had never left the Sunshine Village mobile home lot. It had never been used as a home and had never been furnished. Jewell was given a "standard invoice" by Sunshine Village describing the mobile home as "new." The certificate of title issued by the Alabama Department of Revenue described it as "new," even though there was a space on the title form where "demonstrator" could be checked. Jimmy Hart testified that the mobile home had not been used as a "model home" but had been on the Sunshine Village lot as regular inventory. Hart testified that the price was not discounted on the basis that it had been used as a demonstrator, but that he "cut the price to move it." The facts of this case compel a finding that the mobile home was not a "demo" or demonstrator model, notwithstanding the use of the term "demo" during the sale.
We must now consider whether the mobile home's apparent defects rendered it not "new." Jewell contends that because of the defects it failed to meet his "reasonable expectations" and, therefore, was not "new." *Page 659 
In Mathis v. Jim Skinner Ford, 361 So.2d 113 (Ala. 1978), this Court stated:
 "Purchasers have a right to assume that new automobiles will perform in accordance with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation."
361 So.2d at 115.
The "reasonable expectations" rule of Mathis, however, does not impose on sellers of new vehicles a general duty in our tort law to sell vehicles that meet reasonable customer expectations. Hines v. Riverside Chevrolet-Olds, Inc.,655 So.2d 909 (Ala. 1994). The "reasonable expectations" rule ofMathis imposes only a duty not to pass off a vehicle as "new" when in fact it has been previously sold or has been so damaged or altered that a reasonable person would not consider it a "new" product, "in accordance with reasonable expectations."Hines, supra, at 923. See Dodd v. Nelda Stephenson Chevrolet,Inc., 626 So.2d 1288 (Ala. 1993); Boulevard Chrysler-Plymouth,Inc. v. Richardson, 374 So.2d 857 (Ala. 1979).
After reviewing the evidence in favor of Jewell and resolving all doubts in his favor, we hold that he failed to present substantial evidence from which a factfinder could infer that the mobile home was not "new" when he purchased it. Jewell produced no evidence that before he purchased it the mobile home had been damaged, altered, or repaired so as to render it not "new." Dodd, supra; Richardson, supra. The mobile home was received by Sunshine Village onto its lot on February 6, 1991. On that same date, it was inspected and accepted by Sunshine Village as being in proper condition. It sat on the lot for approximately nine months before Jewell purchased it. Jewell presented no evidence that the mobile home had been damaged or had undergone repairs before its sale. Jewell also failed to present any evidence that Southern Energy intended to deceive or otherwise to injure.
We also conclude that Jewell presented no substantial evidence of fraud in regard to the subsequent repairs of the mobile home. Although Southern Energy may not have provided the paradigm of good service, Jewell presented no substantial evidence that it harbored an intent not to repair the mobile home or otherwise to injure or deceive Jewell. The evidence indicates that on one occasion, a representative from Southern Energy spent two or three days making repairs to Jewell's mobile home, apparently repairing all but 5 of 128 defects in Jewell's original list. On other occasions, Southern Energy tried to make appointments with Jewell, but the parties could not agree on a time or else Jewell could not be reached. Although under the express provisions of its warranty, Southern Energy would be responsible for repairing the mobile home, Jewell presented no substantial evidence to support a fraud action based either on the sale of the mobile home or on the subsequent repairs.
 Claims against Sunshine Village
Jewell asks this court to reverse the trial court's summary judgment in favor of Sunshine Village on his claims alleging fraud, breach of contract, breach of warranty, and negligent or wanton repair.
Jewell's fraud claims are based on his allegation that the mobile home failed to meet his "reasonable expectations" and on Sunshine Village's failure to repair the mobile home. As stated above, the reasonable expectation rule of Mathis does not impose a general duty in our tort law to sell products that meet a customer's reasonable expectations. The duty imposed by our tort law is not to sell a product as a "new" product "when it has been previously sold or has been so damaged or altered that a reasonable person would not consider it a 'new' product, in accordance with reasonable expectations." Hines, supra, 655 So.2d at 923. Because we have concluded that Jewell presented no substantial evidence that the mobile home had *Page 660 
been sold or damaged or altered before he purchased it, we conclude that he has no valid fraud claim against Sunshine Village related to the sale.
Additionally, we conclude that Jewell presented no substantial evidence of fraud in regard to the subsequent repairs on the mobile home. When Jewell purchased the mobile home, Sunshine Village informed him about the warranty provided by the manufacturer, Southern Energy. Jewell testified that he understood that the one-year warranty provided by Southern Energy covered the defects to the mobile home and that Sunshine Village did not obligate itself to perform repairs on it.
Jewell claims that Sunshine Village breached its contract to sell him a "new" mobile home. Jewell claims that, because it failed to meet his reasonable expectations, the mobile home was not "new." Because we have concluded that the mobile home was in fact "new," we must conclude that Sunshine Village did not breach its contract.
Next, Jewell claims that Sunshine Village breached an express warranty that the mobile home was new. Jewell claims that Sunshine Village gave the express warranty that it was "new," although, he says, it was not new because it failed to meet his reasonable expectations. Because we have concluded that the mobile home sold to Jewell was in fact "new," we must conclude that Sunshine Village did not breach an express warranty that the home was new.
Jewell also claims that Sunshine Village is liable for breach of an implied warranty of fitness for a particular purpose, breach of an implied warranty of merchantability, and breach of implied warranties under the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act.[2] In its briefs, Sunshine Village does not argue that the implied warranties are inapplicable; rather, it argues that Jewell failed to provide sufficient notice of breach of any implied warranties.
In Alabama's version of the Uniform Commercial Code, the provisions dealing with notice require that where a tender has been accepted, the buyer must notify the seller of any breach within a reasonable time after it is discovered or should have been discovered. This Court has stated that the purpose of notification is two-fold:
 " 'Notice of breach serves two distinct purposes. First express notice opens the way for settlement through negotiation between the parties. . . . Second, proper notice minimizes the possibility of prejudice to the seller by giving him "ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties.' "
Parker v. Bell Ford, Inc., 425 So.2d 1101, 1103 (Ala. 1983) (quoting earlier authorities).
Section 7-2-607(3)(a) does not indicate what constitutes sufficient notice, however, Committee Comment four to §7-2-607, states, "The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." Section 7-1-201(26) provides that a person " 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it." The question of sufficient notice "must be tested in light of the facts of the particular case." Page v. CamperCity Mobile Home Sales, 292 Ala. 562, 297 So.2d 810, 812
(1974).
The evidence, viewed in a light most favorable to Jewell, indicates the following: The mobile home was delivered and set up by Sunshine Village soon after Jewell purchased it. Jewell made a handwritten list of 128 items that he considered to be defects in the home. He gave this list to Hart, the manager at Sunshine Village. Hart had the list typed and sent by facsimile transmission to Southern Energy, for it to make repairs under the one-year express warranty. In January 1992, after no repairs had been made, Jewell complained to the Better Business Bureau, complaining that Southern Energy *Page 661 
had not repaired the mobile home. In February 1992, Jewell complained to the Alabama Manufactured Housing Commission that Southern Energy had not repaired the mobile home. The "consumer complaint" prepared by Jewell for that commission did not allege any complaints against Sunshine Village, only complaints against Southern Energy; it alleged failure to fix the exterior walls, interior walls, windows, plumbing fixtures, etc. On March 5, 1992, an agent of the Alabama Manufactured Housing Commission inspected Jewell's mobile home, in response to Jewell's complaint. This inspection showed that the set-up was proper. The inspection report contained a list of 54 complaints, 53 of which the report stated were the manufacturer's responsibility and one that was the dealer's responsibility, a defective furnace. The inspection report was sent to both Sunshine Village and Southern Energy. Upon receiving the report, Sunshine Village contacted the furnace manufacturer, which sent a representative to repair Jewell's furnace.
In April 1992, Southern Energy sent a service representative to perform repairs on Jewell's mobile home. The service representative spent between two and three days repairing the defects and repaired all but 5 of the 128 defects that Jewell had initially listed. The list included "excessive caulking around windows," "vinyl cut too short around Master bedroom window," "black tar splashed on back side of home," "carpet in bedrooms needs replacing," and "need French doors for bath." Jewell, who by April 1992, when the Southern Energy Homes representative did the repairs, had worked as an employee of Sunshine Village helping to set up mobile homes, admits that these problems were the responsibility of Southern Energy and were not related to the setup of the home. In August 1992, Jewell added to his list of complaints a complaint that his front porch had no drains and that that fact had caused water to leak into the living room. Jewell testified that he knew that this problem was the responsibility of the manufacturer. Hart wrote Southern Energy and requested that the repairs be done. That same month Hart went out to Jewell's home and tried unsuccessfully to alleviate the leaking problem. Jackie Compton, the president of Sunshine Village, wrote Southern Energy again in November 1992, requesting that the leak be repaired. At no time did Jewell complain that the set-up of the home had been improperly done.
Before he filed his complaint, Jewell made no attempt to notify Sunshine Village that he had experienced problems with the set-up. Sunshine Village had no notice of the specific problems relating to the set-up until August 9, 1993, eight months after Jewell had filed the complaint. These facts compel a conclusion that Jewell did not give sufficient notice of a breach of an implied warranty.
Jewell next argues that Sunshine Village negligently or wantonly repaired the mobile home. The only repair by Sunshine Village was Hart's unsuccessful attempt to repair the leaking problem. While Jewell alleges that that attempt may have unleveled the mobile home, he presented no evidence that the mobile home was in fact not level or that the repair attempt made the leak worse or caused further damage to the mobile home. In fact, his own expert concluded that "there is no evidence to suggest a severe leak problem in the dining room and living room areas." Based on the foregoing, we must conclude that the attempted repair by Sunshine Village did not proximately cause damage to Jewell's mobile home.
AFFIRMED.
MADDOX, HOUSTON, KENNEDY, and COOK, JJ., concur.
[1] Jewell's breach of warranty, contract, and negligent or wanton repair claims against Southern Energy remain pending in the Circuit Court of Elmore County.
[2] Sec 15 U.S.C. § 2301 et seq.